PETER STAUB et al. v. THOS. L. WILLIAMS et al.

WILL, *Trust estate.* A trust estate devised to the executors as trustees for the use of the legatee or his children, with full power in the trustees to do with it as the testator could do if living, is not subject to attachment by the creditors of the legatee.

### FROM GREENE.

Appeal from the Chancery Court at Greeneville. H. C. SMITH, Ch.

A. B. WILSON for complainants.

H. H. INGERSOLL for defendants.

TURNEY, J., delivered the opinion of the court.

A number of bills are filed by persons claiming to be creditors of Thos. L. Williams, and asking for attachments to be levied on his interests in the estate of his mother, Mrs. C. D. Williams, deceased. On the 26th of November, 1862, defendant Williams executed his note to Sylvester Armentrout for $200, due at six weeks. That note was transferred to Mary O. Willis on the 8th of May, 1865.

It is proven that at the time of the execution of the note it was agreed that it should be paid in rents due and to be due from Armentrout to the mother of Williams, and the note was given as a memorandum by which the agent of Mrs. Williams would be enabled to make the settlement. The indebtedness of

Staub v. Williams.

Armentrout was never settled in any way, and is in excess of the amount of the note.

The note was transferred after maturity. The equities existing against it in the hands of the payee exist against the transferee, and the exceptions should have been allowed by the chancellor.

The proof conclusively shows the Kennedy note to have been paid before its maturity. The exception must be sustained.

The Harden note, of October 3, 1862, for three hundred dollars, must be charged to Williams at the value of Confederate money at maturity. The note of two hundred and fifty-five dollars, of January 28, 1863, was not discharged by Williams in keeping Harden out of active service in the Confederate army, and will be charged at the value of Confederate money.

The note to John Gorrel, and signed by Duncan as agent of Williams, will be allowed, the proof showing authority in Duncan to execute it. It will be scaled to the value of current bank notes at the date of its maturity.

The six hundred dollar note to M. W. Borden was properly disallowed by the chancellor, and there is no appeal by Borden. The eleven hundred dollar note will be allowed, after being credited by $975 owing by him to Williams, the balance being scaled to the value of Confederate money.

The note to Thomas Weems for one hundred and fifty dollars is barred by the statute of limitations, which is pleaded.

The facts charged in the bill as constituting fraud

are insufficient, and the bill distinctly charges that a former suit for the recovery has been abandoned. The bill is in no sense in aid of that suit.

Upon the question of the liability to attachment of the property seized, it is necessary to examine the will and codicils thereto of Mrs. C. D. Williams.

After providing by will for an equal division of the property amongst her children, Mrs. Williams, in the first codicil, directs: "In place of devising those parts of my estate which are devised in said will to my sons Joseph A., Wm. D. and Thos. L. Williams, directly to them, I do hereby devise the same to Jas. W. Deaderick and Wm. H. Sneed, as trustees, with liberty to my said trustees to convey the same to each of said sons respectively, or in the event of the death of either, to the heirs at law of such deceased son, or in such other mode as my said trustees may deem proper. Said trustees are to exercise a sound discretion in *controlling* the use and enjoyment of said property, and also in regard to the conveyance of the same, in such manner as to prevent the same from being sold by execution or squandered. The intent of this codicil being that neither of my sons is to enjoy said property except with the assent and under the directions of my said trustees."

In the second codicil she says: "In executing the powers conferred by my first codicil, I wish my executors and trustees, in the division of my estate, to be guided and controlled by the leading objects and motives contained in the original will, the most prominent of which are, to make a just and equal distri-

Staub *v.* Williams.

bution of my property among my children, or those representing them, but to do this in such a manner as to prevent the shares ultimately designed for them from being subjected to the satisfaction of unjust judgments which I am under no legal or moral obligation to pay or provide for. For the attainment of these ends, it was and is my intention to vest in my said executors and trustees the same unlimited power and discretion which I could exercise myself if living, and not to be subject to the control of my children or of their creditors, real or imaginary."

It is plain from these clauses that it was the intention of the testatrix that her sons should have, at most, only the use of the fruits of the property devised, and should in no event dispose of or burden the body.

The decree of the chancellor ordering a sale is reversed and the attachment discharged. The decree in other respects will be modified, reversed or affirmed, as to the items of indebtedness, as indicated in this opinion; and, in each instance, the costs of this court and of the court below will be paid by the unsuccessful party.

DEADERICK, C. J., did not engage in the hearing of this cause, being incompetent.