**In re Roger Lee HOLT, Debtor.**

**Glen C. SHULTS, Jr., Trustee, Plaintiff,**

**v.**

**ROSE'S STORES, INC., Roger Lee Holt, Defendants.**

Bankruptcy No. 3–82–01250.
Adv. No. 3–82–1038.

United States Bankruptcy Court,
E.D. Tennessee.

July 29, 1983.

Glen C. Shults, Jr., Campbell, Hooper & Shults, Newport, Tenn., pro se.

Dan W. Holbrook, Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., for defendant Rose's Stores, Inc.

J. William Myers, Myers & Myers, Newport, Tenn., for defendant Holt.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the debtor's interest in funds in a profit sharing plan of his former employer is property of his chapter 7 bankruptcy estate. 11 U.S.C.A. § 541 (1979). Defendants, the debtor and his former employer, contend that the funds sought by the plaintiff trustee are funds within a spendthrift trust, hence, not property of the debtor's estate. 11 U.S.C.A. § 541(c)(2) (1979). Alternatively, the defendants assert that the debtor is entitled to an exemption in the disputed funds pursuant to Tenn.Code Ann. §§ 26–2–102 and –111(1)(D) (1980). In contradistinction, the trustee maintains that the profit sharing plan does not qualify as a spendthrift trust under applicable nonbankruptcy law. Further, the trustee maintains that the debtor failed to timely claim an exemption in the funds. The debtor's attorney argues that any tardiness in filing his client's amendment to claim the exemption should be excused since the trustee previously advised he would not seek to compel a turnover of the funds at issue.

### I

The facts have been stipulated by the parties. Roger Lee Holt, the debtor, presently thirty-three years of age, was formerly employed by defendant Rose's Stores, Inc.[1] During this former employment, the debtor was a participant in the Rose's Stores profit sharing plan, a qualified tax exempt plan under both the Employee Retirement Income Security Act of 1974 (ERISA)[2] and I.R.C. § 401(a) (West Supp. 1983). The debtor had ten years of employment service when his employment with Rose's Stores ended on January 15, 1981.

The debtor's account balance of $12,-605.00 in the profit sharing plan consists of contributions made solely by Rose's Stores. Under the terms of the plan debtor is entitled to a vested interest in 66⅔% of the funds in this account, or $8,403.33. However, no benefit from the plan is payable to the debtor until the first day in April after which he shall have attained the age of sixty.[3] Thereupon, the debtor will be entitled to receive quarterly installment payments over a period not to exceed his life expectancy. However, the administrative committee of the plan in its sole discretion may authorize an earlier distribution in the form of a lump sum payment, quarterly installments, or a combination thereof.[4]

The profit sharing plan and trust indenture includes the following restrictive provision:

6.6  *Nonalienation of Benefits:*

(a) No ... former Employee ... or Beneficiary shall have the right to sell, assign, transfer, mortgage, pledge, hypothecate, give or alienate, either directly or indirectly his interest in this Trust or any separate account maintained under this Trust or any benefit in or payment under this Trust and any purported attempt at alienation shall be null and void.

(b) The interest of any ... former Employee ... or Beneficiary in this Trust, or any separate account main-

---

1. In 1982, defendant Rose's Stores employed approximately 12,000 persons at 235 stores in 13 different states. Some 6,824 of those employed participated in the Rose's Stores profit sharing plan.

2. See 29 U.S.C.A. §§ 1001–1461 (Supp.1983).

3. Since the debtor was born on October 2, 1949, he is not entitled to any payment under the plan until April 1, 2010.

4. Section 6.4 of the plan recites in material part:

*Resignation or Discharge*

. . . . .

(c) It is not intended that the discretion of The Committee shall ever in practice encourage Employees to leave the employ of The Company in the hope of immediately or shortly possessing themselves of funds held for their benefit.

tained under this Trust or any benefit in or payment under this Trust shall not be subject to levy, garnishment, execution attachment, alimony or support payments, or Statutory liens, either directly or indirectly, and any such attempted seizure shall be null and void.

(c) In the event of any attempted alienation under (a) above or seizure under (b) above, the . . . former Employee's . . . or Beneficiary's absolute right to his interest in this Trust, or any separate account maintained under this Trust or any benefit in or payment under this Trust shall terminate and thereafter ipso facto pass to such one or more persons as The Committee may select from among the Beneficiaries, if any, theretofore designated by such . . . former Employee, or the spouse and blood relatives of the . . . former Employee. However, The Committee in its sole discretion may re-appoint the . . . former Employee or Beneficiary to receive any payment thereafter becoming due either in whole or in part. Any appointment made by The Committee hereunder may be revoked by The Committee at any time, and a further appointment made by it.

The debtor's voluntary chapter 7 petition was filed on August 23, 1982. On November 3, 1982, citing Tenn.Code Ann. §§ 26-2-102 and –111(1)(D) (1980), the debtor filed an amendment to schedule B–4 of his petition requesting an exemption in his interest in the Rose's Stores profit sharing plan.[5] On the following day, the trustee filed his complaint requesting judgment in the amount of $12,700.00 against both the debtor and defendant Rose's Stores.

## II

■ Bankruptcy Code § 541(a) enacts in material part:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C.A. § 541(a) (1979).

The exception from property of the estate provided by Code § 541(b) is inapposite, but the focal statute in this case is Code § 541(c)(2), which recites:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The congressional intent underlying the enactment of Code § 541(c)(2) was to exclude spendthrift trust property in which a debtor has an interest from property of the debtor's estate to the extent the restrictions in the trust are enforceable under nonbankruptcy law.[6] If the restrictions prohibiting alienation of benefits, attachment, or garnishment recited in the Rose's Stores profit sharing plan are enforceable under applicable nonbankruptcy law, no portion of

---

**5.** No interest in the profit sharing plan was reported in the schedules accompanying the debtor's petition. However, the debtor's attorney apparently was unaware of the debtor's interest in the plan until September 30, 1982, the date of the Creditors' Meeting.

**6.** The House Report discussion of the proposed provision enacted as Bankruptcy Code § 541(c)(2) recites:

Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 369, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6325.

the controverted funds is property of the debtor's estate.

■ Finding, among other facts, that the national interest was involved and that the security of millions of employees and their dependents was affected by employee benefit plans, as well as a need for minimum standards, Congress enacted the Employee Retirement Income Security Act of 1974 (ERISA). The profit sharing plan of defendant Rose's Stores is a plan within the coverage of ERISA.[7] With exceptions immaterial herein, the provisions of subchapter I (Protection of Employee Benefit Rights) of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" within the coverage of ERISA. 29 U.S.C.A. § 1144(a) (1975). ERISA, however, excluding inapposite exceptions, is not to be construed as amending or superseding any law of the United States. 29 U.S.C.A. § 1144(d) (1975).[8] Because Congress intended to preempt not only those state laws purporting to regulate areas explicitly within the coverage of ERISA but all state laws pertaining to employee benefit plans, applicable federal, as opposed to state, nonbankruptcy law controls whether the restrictions in the profit sharing plan are enforceable.[9] See *Wadsworth v. Whaland,* 562 F.2d 70, 77 (1st Cir.1977), *cert. denied,* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978). Indeed, former Senator Javits, a member of a Senate legislative committee which handled the ERISA legislation, remarked:

It is also intended that a body of federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.

120 Cong.Rec. 29,942 (1974) (remarks of Sen. Javits).

The question presented in *Gen. Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980), was whether the benefits provided by a pension plan within the coverage of ERISA were subject to garnishment by a creditor of a plan beneficiary. Circuit Judge Lively observed that, although garnishment was not mentioned in ERISA, both ERISA and an Internal Revenue Code section pertaining to qualified pension or profit sharing plans include nearly identical language prohibiting the alienation or assignment of plan benefits. These provisions recite in material part:

Assignment or alienation of plan benefits

(d)(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

(2) For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs.

29 U.S.C.A. § 1056(d) (1975).

(13) A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for

---

7. See 29 U.S.C.A. § 1003 (1975).

8. This statute provides: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law."

9. The parties have agreed that it is immaterial whether the profit sharing plan at issue qualifies as a spendthrift trust under state law. *Contra, Matter of Goff,* 706 F.2d 574 (5th Cir. 1983).

purposes of defraying plan administration costs.

26 U.S.C.A. § 401(a)(13) (1978).

Judge Lively further observed that the federal court decisions concerning garnishment of pension plans within ERISA coverage generally denied relief to the creditor, except in cases involving garnishment for the purpose of enforcing a duty of maintenance or support owed to a spouse or dependent by a plan beneficiary. *Buha,* 623 F.2d at 460–61. However, the following legislative, as opposed to interpretative, regulation was critical to the court's decision that the pension plan benefits were not subject to garnishment:

> (b) *No assignment or alienation.*—(1) *General rule.* Under Section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process.

26 C.F.R. § 1.401(a)–13 (1979).

This same regulation was cited by the Fourth Circuit in *Tenneco Inc. v. First Virginia Bank,* 698 F.2d 688 (4th Cir.1983), in which the issue was whether a judgment creditor could reach a fully vested interest, payable in a lump sum upon request, of a former employee in an ERISA thrift plan and stock ownership plan. Citing *Buha* and three other decisions for the proposition that "an employee's accrued benefits under . . . a qualified plan may not be reached by judicial process in aid of a third-party creditor," *Id.* at 689–90, the court determined the employee's interest was not subject to garnishment.

Neither this regulation nor any provision of ERISA expressly forbids a creditor of a plan beneficiary from employing judicial process to reach benefits to which his debtor is entitled under an ERISA plan. The regulation merely imposes a requirement for qualification of a plan for favorable tax treatment under 26 U.S.C.A. § 401(a)(13)

(1978). Consequently, there is a division of authority on the question of whether benefits under an ERISA plan may be subjected to judicial process. See Comment, *Attachment of Pension Benefits Under ERISA,* 74 Nw.U.L.Rev. 255 (1979).

*In re Rogers,* 24 B.R. 181 (Bkrtcy.D.Ariz. 1982), involved the debtors' claim of an exemption in a profit sharing plan of the husband's employer. The debtor had a 70% vested interest in his account balance. The profit sharing plan was duly qualified by the IRS and within the coverage of ERISA. The court noted that the initial inquiry was whether the debtor's interest was property of the bankruptcy estate. After citing Code § 541(c)(2) and discussing the Sixth Circuit's decision in *Buha,* the court held that the debtor's interest in the ERISA plan was not property of the estate.

*In re Threewitt,* 24 B.R. 927 (D.C.D.Kan. 1982), also presented the question of whether a debtor's vested, undistributed interest in an ERISA pension plan was property of the chapter 7 debtor's estate. In reversing the decision of the bankruptcy court,[10] the district court stated:

> The great weight of authority is to the effect that a debtor's interest in an ERISA pension fund is beyond the reach of his general creditors. . . . [S]uffice it to say that this Court is persuaded that Congress intended that general creditors not reach a debtor's interest in an ERISA pension fund . . . .

*In re Threewitt,* 24 B.R. at 929. Accord *In re Pruitt,* 30 B.R. 330, 10 Bankr.Ct.Dec. 760 (Bkrtcy.D.Colo.1983); *Commercial Mtg. Ins. Inc. v. Citizens Nat'l Bank,* 526 F.Supp. 510 (N.D.Tex.1981); *In re Di Piazza,* 29 B.R. 916, 10 Bankr.Ct.Dec. 618 (Bkrtcy.N.D.Ill. 1983).

The legislative history of ERISA, found in a report of the House Committee on Ways and Means, supports the result in these cases:

> *Alienation.*—To further ensure that the employee's accrued benefits are actually available for retirement purposes, the

10. *In re Threewitt,* 20 B.R. 434 (Bkrtcy.D.Kan. 1982).

committee bill also contains a provision requiring the plan to provide that benefits may not be assigned or alienated. (Of course, this provision is not intended to prevent the transfer of benefit rights from one qualified plan to another.)

Nevertheless, a plan will be permitted to provide for voluntary and revocable assignments (not to exceed 10 percent of any benefit payment).

H.R.Rep. No. 807, 93d Cong. 2d Sess. 68, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4670, 4734.

Considering the legislative history of ERISA, the court concludes that a restriction on a transfer of a beneficial interest of a chapter 7 debtor in a qualified, employer-created, spendthrift ERISA trust plan is enforceable under federal nonbankruptcy law. The funds at issue are excluded from the property of the debtor's estate. 11 U.S.C.A. § 541(c)(2) (1979). This conclusion is supported by the Sixth Circuit decision in *Buha* as well as the fact that the disputed funds, over which the debtor has no control, consist entirely of contributions, and earnings thereon, toward a pension for the debtor by his former employer, defendant Rose's Store.[11] The court's conclusion eliminates the necessity of considering any exemption claim against the funds at issue.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

---

11. The court's determination is readily distinguishable from both *In re Watson,* 13 B.R. 391 (Bkrtcy.M.D.Fla.1981) and *Matter of Baviello,* 12 B.R. 412 (Bkrtcy.E.D.N.Y.1981). The cooperative investment plan in *Watson* was very similar to a revocable trust; the debtor's contributions were voluntary and withdrawal at will was permitted. *Baviello,* decided under the former Bankruptcy Act, involved a Keogh account over which the bankrupt had complete control at all times.