In re G.W. RIDENOUR, Jr. a/k/a G.W. Ridenour, a/k/a George W. Ridenour, Jr., Debtor.

Bankruptcy No. 3–84–00216.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 13, 1984.

---

Lacy & Winchester, P.C., J. Michael Winchester, Knoxville, Tenn., for debtor.

Wade M. Boswell, Knoxville, Tenn., for trustee.

Morton, Lewis, King & Krieg, Mary M. Farmer, Knoxville, Tenn., for Federal Deposit Insurance Corporation.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the assets of the debtor's pension plan, established and funded by a partnership of which debtor was a partner, are either excluded from the debtor's estate under 11 U.S.C.A. § 541(c)(2) (1979) or, alternatively, exempted from the debtor's estate under Tenn.Code Ann. § 26–2–111(1) (1980).

## I

Involuntary chapter 7 proceedings were commenced against this debtor on February 10, 1984. During the previous nineteen years debtor was a partner in a law firm. Effective December 1, 1976, the partnership established a pension plan for partners and employees. The terms of the plan were set forth in a document designated "Defined Contribution (Money Purchase) Prototype Retirement Plan and Trust Agreement For Self-Employed Individuals No. K–1." Originally, debtor was named as trustee of the plan under the adoption agreement. Debtor terminated his association with the partnership in April 1983. Presently, the debtor no longer serves in the capacity of trustee.[1]

Under the plan the employer contributed for each participant an amount equal to ten percent of the compensation paid to the participant during the taxable year. The participant could make additional voluntary contributions if desired. However, debtor never elected to make any such additional voluntary contributions. All of the funds in issue were contributed to the fund by the partnership.

The plan provided for an immediate 100 percent vested interest in all contributions, employer-made or voluntary, credited to the participant's account. The funds in the plan were used to purchase annuity contracts and life insurance policies. The trustee was the owner of these contracts with all the rights and privileges under the contracts.

The plan provided for distribution of benefits to the participant to commence upon either death, retirement, disability, or termination of employment. However, paragraph 8.2 of the plan provided that "except in the case of Disability, no distribution shall be made to any Owner-employee prior to his attaining age 59½ in excess of the amount of his own contributions (if any)."[2]

Paragraph 9.2 of the plan provided that if the plan itself were terminated "all Participants other than Owner-employees shall be treated as though they have each incurred a Termination of Employment, and the Trustee shall make distributions in accordance with the procedure set forth in section 8.2 above." Furthermore, this paragraph provided:

On termination of this Plan, all restrictions on the distribution of benefits shall continue to apply, and no distribution shall be made to any Owner-employee following termination of this Plan prior to his attaining age 59½ in excess of the amount of his own contributions (if any) made pursuant to section 3.4 above.

In effect, then, under the existing terms of the plan an owner-employee such as the debtor would be entitled upon termination of his employment or upon termination of the plan only to a distribution based upon his own voluntary contributions to the fund and not to a distribution based upon the so-called employer-made contributions.

The plan, however, was subject to amendment. Under paragraph 9.1 the employer reserved the right to amend the plan by changing the investment options. In addition, the employer could change the duties and responsibilities of the Trustee with the Trustee's written consent. If the employer did amend the Prototype Plan and Trust in any manner other than to simply change the investment options, then a plan so amended would "no longer participate under the prototype arrangement" and would "henceforth be considered an individually designed plan."

In order to meet the requirements of the Employee Retirement Income Security Act, 29 U.S.C.A. § 1056(d)(1) (1975), and to qualify for tax exempt status under the Internal Revenue Code, 26 U.S.C.A. § 401(a)(13) (1978), paragraph 13.9 of the plan included

---

**1.** Debtor's former partners Roger L. Ridenour and Ronald L. Ridenour are now the trustees under the plan.

**2.** Paragraph 2.1(1) defines "owner-employee" as "in the case of a partnership, a partner who

owns more than 10% of either the capital or profits interest in the partnership." Given the limited number of partners participating in the partnership, the court has assumed that the debtor meets this definition.

the following anti-alienation and anti-assignment clause:

*Nontransferability and Spendthrift Provision* The right of any Participant or beneficiary to any benefit or interest under this Plan and Trust shall not be subject to sale, assignment, discount, pledge as collateral for any purpose, encumbrance or other alienation and, to the extent permitted by law, shall not be subject to attachment, execution, garnishment or other legal or equitable process by any creditor of any Participant or beneficiary.

The contributions credited to the debtor's account were used to purchase (1) a Pension Insurance Policy, issued December 1, 1970, (2) a Pension Life Insurance Policy, issued November 1, 1974, and (3) a Flexible Retirement Annuity Contract, issued April 1, 1980. Each of these contracts contains provisions establishing a cash surrender value for the respective contract dependent upon the length of time payments have been made on the contract. The precise extent of the present value of these contracts is not clear from the information provided to the court.

## II

The commencement of bankruptcy proceedings under Title 11 of the United States Code creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (1979). As the legislative history makes clear, this provision was intended to make "significant changes in what constitutes property of the estate," H.R.Rep. No. 595, 95th Cong., 1st Sess. 175, *reprinted in* 1978 U.S.Code & Ad.News 5787, 5963, 6136, and to broaden considerably the scope of the definition of property of the estate under prior law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–69, *reprinted in* 1978 U.S. Code & Ad.News 5963, 6323–25. Specifically, the new Bankruptcy Code abandoned the test under Section 70a(5) of the old Bankruptcy Act which defined the property of the bankrupt's estate as "property ...

which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered." 11 U.S.C.A. § 110(a)(5) (repealed 1978); 4 L. King, *Collier on Bankruptcy* ¶ 541.02 at 12 (1984). Thus, the Bankruptcy Code provides that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision— (A) that restricts or conditions transfer of such interest by the debtor." 11 U.S.C.A. § 541(c)(1)(A) (1979).

However, § 541(c)(2) does provide for an exception to this general rule: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C.A. § 541(c)(2) (1979).

The immediate issue is, then, whether this exception encompasses and excludes from the debtor's estate a pension plan containing an anti-alienation and anti-assignment clause in order to satisfy the requirements of the Employees' Retirement Income Security Act, 29 U.S.C.A. § 1056(d)(1) (1975), and to qualify for tax exempt status under the Internal Revenue Code, 26 U.S.C.A. § 401(a)(13) (1978).

The courts are not of one mind in this question. Those taking a more liberal view have held § 541(c)(2) applicable in this context. For example, in *Clotfelter v. CIBA–GEIGY Corp. (In re Threewitt)*, 24 B.R. 927 (D.Kan.1982), the district court rejected as an "unnecessarily narrow construction," 24 B.R. at 929, the Bankruptcy Court's conclusion that § 541(c)(2) would apply only to a pension plan that constituted a traditional spendthrift trust under state law. The district court reasoned that the actual language of the statute was not limited to "spendthrift trusts." The court also reasoned that, since under the majority approach a debtor's interest in an ERISA pension fund may not be levied upon by general creditors, such an interest would also be beyond the bankruptcy trustee's reach. The court said:

In the case *sub judice* the relevant question is not whether the Plan looks like a good, old-fashioned spendthrift trust; the relevant question is whether Mr. Threewitt's interest in the Plan would be protected from creditors in an ordinary state court action in which non-bankruptcy law would apply. Under the plain and simple language of Section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable against the bankruptcy trustee.

*Clotfelter,* 24 B.R. at 929.

*See also In re Pruitt,* 30 B.R. 330 (Bankr. D.Colo.1983); *Warren v. G.M. Scott & Sons (In re Phillips),* 34 B.R. 543 (Bankr.S. D.Ohio 1983).

Those courts taking the contrary view have held that an ERISA pension fund is excludable from the estate under § 541(c)(2) only if it constitutes a spend-thrift trust under the relevant state law. *Samore v. Graham (In re Graham),* 726 F.2d 1268 (8th Cir.1984); *Goff v. Taylor (In re Goff),* 706 F.2d 574 (5th Cir.1983). *See also Firestone v. Metropolitan Life Ins. Co. (In re Di Piazza),* 29 B.R. 916 (Bankr. N.D.Ill.1983); *Avery Federal Savings & Loan Ass'n v. Klayer (In re Klayer),* 20 B.R. 270 (Bankr.W.D.Ky.1981). The court in *Graham,* for example, reached its con-clusion based upon the broadened scope of property of the estate under the new Bank-ruptcy Code, the legislative history of § 541(c)(2), the existence of exemption pro-visions specifically addressing pension plans, and the fact that ERISA provisions, while preempting state law, do not preempt other federal law. *Graham,* 726 F.2d at 1271.

The legislative history of § 541(c)(2) is indeed instructive. In its section by section analysis the House Report states:

> Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition trans-fer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of sub-section (c), however, preserves restric-tions on transfer of a spendthrift trust to the extent that the restriction is enforce-able under applicable nonbankruptcy law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 369, *reprinted in* 1978 U.S.Code & Ad. News 5963, 6325.

More explicitly, in its general discussion of property of the estate the House Report also states:

> The bill makes significant changes in what constitutes property of the estate. . . .
>
> The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests . . . whether or not transferable by the debtor. The bill . . . continues over the exclusion from prop-erty of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law. The bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76, *reprinted in* 1978 U.S.Code & Ad. News 5963, 6136.

The Code specifically deals with pension benefits under the federal exemptions set forth in 11 U.S.C.A. § 522(d) (1979). Pur-suant to its option to do so under 11 U.S. C.A. § 522(b)(1) (1979) Tennessee has elect-ed to enact its own state exemptions per-taining to pension benefits. Tenn.Code Ann. § 26–2–112 (1980); Tenn.Code Ann. § 26–2–111(1) (1980).[3] Admittedly, apply-ing § 541(c)(2) to exclude ERISA pension plans from the estate would not render these exemptions wholly surplusage since

---

**3.** *See infra* note 5 and accompanying text.

they would continue to apply to various non-ERISA plans. *Clotfelter*, 24 B.R. at 930. Nonetheless, the existence of these specific exemption provisions caused the court in *Graham* to observe:

> We thus see a coherent scheme regarding a debtor's pension rights under the Code consistent with the Code's general policy. The question of pension rights is dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start they may then be exempted out.

*Graham*, 726 F.2d at 1272–73.

Perhaps the single most critical question to resolve is the significance and effect of the ERISA preemption provisions. ERISA makes clear that its provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C.A. § 1144(a) (1975). Thus, the Sixth Circuit concluded that the anti-alienation and anti-assignment provisions mandated by ERISA preempt state law and prevent creditors from levying under state law upon ERISA pension plans. *General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir. 1980).

However, ERISA also makes clear that its provisions were not intended to preempt other federal law. The statute provides: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law." 29 U.S.C.A. § 1144(d) (1975).

The difficulty is thus clear. On the one hand it is possible to conclude that the concept under § 541(c)(2) of a restriction "enforceable under applicable nonbankruptcy law" must include the ERISA-mandated clauses since they preempt state law and prevent creditors from levying under state law, regardless of whether or not the pension plans actually constitute spendthrift trusts under state law. As previously noted, that is essentially the conclusion of *Clotfelter* and its progeny.

■ But yet another conclusion is possible. Federal law defines the parameters of property of the estate. That federal law is not preempted by the provisions of ERISA. If that federal bankruptcy law limits and defines the property intended to be excluded under § 541(c)(2) by reference to a specific device defined and delineated under state law, then the state law defining that device is precisely what the court must look to. In short, ERISA does not preempt the federal law which defines the § 541(c)(2) exclusion as applying only to trusts qualifying as valid spendthrift trusts under the relevant state law.

The Eighth Circuit and the Fifth Circuit opted for this latter conclusion in *Graham* and *Goff.* As the court in *Graham* stated:

> ERISA specifically provides that its provisions were not to affect the operation of other federal statutes. . . . Thus, while ERISA-required anti-alienation clauses may preempt state law and preclude the use of judgment enforcement devices provided thereunder, they do not preclude inclusion of pension benefits in a debtor's bankruptcy estate by operation of federal law.

*Graham*, 726 F.2d at 1273.

This court agrees. The legislative history speaks of excluding the debtor's "interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 176, *reprinted in* 1978 U.S.Code & Ad.News 5963, 6136. It speaks, too, of a policy of not defeating "the legitimate expectations of the settlor of the trust." Such language clearly reinforces the conclusion that Congress had in mind the type of spendthrift trust traditionally recognized under state law.

The reference to the legitimate expectations of the settlor is no doubt an explicit referral to the fundamental principle underlying the validity of spendthrift trusts— the recognized right of the settlor to regulate the disposal of his property. In short, the courts have reasoned that since the

property in a spendthrift trust proceeds from one other than the beneficiary the creditors of the beneficiary are not deprived of anything to which they would otherwise have been entitled. Thus, the law recognizes the settlor's right to condition his bounty as he sees fit. *State ex rel. v. Nashville Trust Co.*, 28 Tenn.App. 388, 190 S.W.2d 785 (1944); 76 Am.Jur.2d *Trusts* § 154 (1975).

Holding the § 541(c)(2) exclusion applicable to all ERISA-qualified pension plans goes far beyond respecting this traditionally recognized right of the settlor of a spendthrift trust. It would permit essentially a self-settled spendthrift trust, a device clearly not permitted under the traditional law of spendthrift trusts. *Rose v. Third Nat. Bank*, 27 Tenn.App. 553, 183 S.W.2d 1 (1944); G.G. Bogert & G.T. Bogert, *Law of Trusts* 154–55 (1973).

In *Shults v. Rose's Stores (In re Holt)*, 32 B.R. 767 (Bankr.E.D.Tenn.1983), this court held an employer-funded ERISA plan excludable under § 541(c)(2). This court based its decision in large part on the Sixth Circuit's holding in *Buha*. As already noted, in *Buha* the Sixth Circuit held that an ERISA pension plan was not subject to garnishment by a creditor acting under state judgment enforcement procedures since the ERISA provisions requiring anti-alienation and anti-assignment clauses preempted state laws relating to the plan. The Sixth Circuit did not distinguish in its holding between employer-funded and employee-funded plans. Thus, *Buha* apparently proscribes garnishment of both types of plan.

In *Shults* this court felt compelled by *Buha* to conclude that an inquiry into whether the plan qualified as a spendthrift trust under state law was irrelevant. *Shults*, 32 B.R. at 770. However, in light of the Eighth Circuit's conclusions in *Graham* (subsequent to both *Buha* and *Shults*) this court is persuaded that ERISA's preemption of state law in the context of garnishment under state law is not necessarily dispositive in the context of federal bankruptcy law. As *Graham* makes clear, the ERISA provisions do not preempt federal law defining the § 541(c)(2) exclusion in terms of spendthrift trusts as defined and recognized under traditional state law. Moreover, the courts have recognized that the policies behind a given limitation or restriction applicable to a creditor seeking garnishment may not be equally applicable in the bankruptcy context of a trustee seeking turnover of the debtor's property. *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (congressional restriction of garnishment in Consumer Credit Protection Act, enacted in effort to prevent consumers from being forced into bankruptcy, was not intended to alter delicate balance of debtor's protections and obligations once bankruptcy occurred); *Firestone v. Metropolitan Life Insurance Co. (In re Di Piazza)*, 29 B.R. 916 (Bankr. N.D.Ill.1983).

This court follows, then, the analysis of *Graham* and concludes that Congress intended to exclude from the debtor's estate under § 541(c)(2) only those ERISA-qualified pension plans which also constitute valid spendthrift trusts under relevant state law.[4]

■ Here, the debtor's pension plan fails the threshold test of a spendthrift trust under Tennessee law. It cannot be a valid spendthrift trust because its settlor

---

4. In *In re Clark*, 18 B.R. 824 (Bankr.E.D.Tenn. 1982), this court evaluated the debtor's Keogh plan for purposes of § 541(c)(2) in terms whether the plan constituted a valid spendthrift trust under Tennessee law. This court concluded that the plan was an invalid attempt by the debtor to establish a spendthrift trust in his own favor.

In *Shults*, although this court did not evaluate the profit-sharing plan in terms of whether it was a valid spendthrift trust under Tennessee law, the court noted that the plan was funded and controlled by the debtor's employer, an entity clearly distinct from the debtor. Furthermore, even were the plan in *Shults* found not to constitute a valid spendthrift trust under Tennessee law, the ultimate result of the case would not be altered. The terms of the plan described at 32 B.R. 768 would clearly qualify it for exemption under the state exemption statute. *See infra* note 5.

and beneficiary are one and the same person. The Tennessee spendthrift trust statute provides that a debtor's beneficial interest in a trust is beyond a creditor's reach only "when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered." Tenn. Code Ann. § 26–4–101(a) (1980). A settlor cannot create a valid spendthrift trust for his own benefit. *McArthur v. Faw*, 183 Tenn. 504, 193 S.W.2d 763 (1946); *Rose v. Third Nat. Bank*, 183 S.W.2d at 7.

 The debtor maintains, of course, that the contributions to his pension plan proceeded not from him but solely from another entity, i.e., the partnership. It is, however, well established that every partner is both principal and agent of the partnership, and also of each of the other partners, with respect to any business within the scope and object of the partnership. 60 Am.Jur.2d *Partnership* § 129 (1972). Each partner is the agent of the partnership and the act of each in transactions relating to partnership business is regarded as the act of all, and binds all. *C.D. Venable & Co. v. Levick, Bro. & Co.*, 39 Tenn. 351 (1859); Tenn.Code Ann. §§ 61–1–108, 61–1–114 (1980).

Prior to appeal of *Graham* to the Eighth Circuit, the Bankruptcy Court considered the effect of a purportedly corporate pension and profit-sharing fund. The debtor (the sole stockholder, officer and director of a professional corporation) argued that the fund was not self-settled because it had been established by the corporation rather than the debtor individually. The court

disregarded the corporate formalities, observing:

> In a valid spendthrift trust, the settlor cannot also be the beneficiary.... Graham's earnings from services were funnelled through the corporate form and then deposited in the trust for his benefit. Even though, in form, the settlor is the Corporation, Graham's earnings from his medical practice furnished the corpus of the trust. Graham is therefore both the settlor and the beneficiary of the Fund. Consequently, the Fund is not a spendthrift trust that is enforceable under nonbankruptcy law.

*Graham*, 24 B.R. at 310.

Such a conclusion is all the more evident in the instant case where even the corporate form is lacking. Here the act of the partnership in establishing and contributing to the pension plan was essentially the act of each of the partners. The partnership was the agent of the debtor in establishing a pension plan for his benefit. The contributions were based on a percentage of his earnings and were made from partnership funds in which he plainly had a pro rata share of ownership. In short, the debtor was both the settlor and beneficiary of his pension plan. The plan thus clearly does not constitute a valid spendthrift trust under Tennessee law and is not excluded from the debtor's estate under § 541(c)(2).

 The remaining question is whether the debtor is entitled to exempt the pension fund from the estate. The debtor concedes that the assets of the fund would not be exempt under Tenn.Code Ann. § 26–2–111(1)(D) (1980), the statutory provision specifically pertaining to the exemption of pension plan.[5]

---

**5.** The statute provides:

[T]he following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

(1) The debtor's right to receive:

. . . . .

(D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on ac-

count of death, age or length of service, unless:

(i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;

(ii) Such payment is on account of age or length of service; and

(iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409).

80

However, the debtor argues instead that he is entitled to exempt the plan under the exemption provision relating to disability benefits. The statute provides:

[T]he following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

(1) The debtor's right to receive:

. . . . .

(C) A disability, illness, or unemployment benefit, or a pension that vests as a result of disability....

Tenn.Code Ann. § 26–2–111(1)(C) (1980).

The debtor argues that although he is not currently disabled and entitled to disability payments under the plan, nonetheless, his "right to receive" such benefits is exempt. Thus, says the debtor, permitting the bankruptcy trustee to liquidate and distribute the pension plan assets would destroy the debtor's "right to receive" disability benefits.

The debtor is mistaken. The debtor's exemptions are determined as of the date of the filing of the bankruptcy petition. *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Currie*, 34 B.R. 745 (D.Kan.1983); *In re Hall*, 31 B.R. 42 (Bankr.E.D.Tenn.1983). The debtor was not disabled and was not entitled to receive disability payments as of that critical date. Section 26–2–111(1)(C) is intended to exempt only payments of disability benefits actually being paid at the time of commencement of the bankruptcy. This is clear, as this court noted in *Clark*, from the distinction drawn by the legislature in § 26–2–111(1)(D) between "the payments made or to be made under a trust ... and the assets which comprise the corpus of

that trust." *Clark*, 18 B.R. at 828. In short, the legislature's inclusion of the provision in § 26–2–111(1)(D) specifically exempting the assets of a pension plan "from which any such payments are made, or are to be made" was a recognition that the preceding provisions dealt only with the exemption of periodic payments actually being paid.

The debtor's interest in the pension plan is not subject to exemption from the debtor's estate under the Tennessee exemption statute.

In accordance with Bankruptcy Rule 7052 this Memorandum constitutes findings of fact and conclusions of law.

*Provided,* however, that *the assets of the fund* or plan from which any such payments are made, or are to be made, *are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58).* Assets of such funds or plans *are not exempt if the debtor may, at his option, accelerate payment so as to receive payment in a lump sum* or in periodic pay-

ments over a period of sixty (60) months or less.

Tenn.Code Ann. § 26–2–111(1)(D) (1980) (emphasis supplied).

Paragraph 7.1 of the plan expressly permits the recipient upon retirement to opt for a cash lump sum payment of his accrued benefits. Thus, the debtor is correct in his assumption that the pension plan would not be exempt under § 26–2–111(1)(D).