## In re Ronald Duane FAULKNER, Debtor.

### Bankruptcy No. 3-87-01214.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 4, 1987.

McCord & Weaver, P.C., John F. Weaver, Knoxville, Tenn., for trustee.

Gail F. Wortley, Knoxville, Tenn., for debtor.

## MEMORANDUM ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION

RICHARD STAIR, Jr., Bankruptcy Judge.

At issue is whether the debtor's vested interest in an ERISA [1]-qualified profit sharing plan established and funded by his employer, RBX Industries, Inc., is excluded from the debtor's estate under 11 U.S.C.A. § 541(c)(2) (West Supp.1987). Alternatively, if it is determined that the debtor's vested interest in the profit sharing plan is an asset of his estate, the trustee seeks a determination as to what portion of that interest, if any, is allowable to the debtor as exempt under Tenn.Code Ann. §§ 26–2–102 or 26–2–111(1)(D) (1980).

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (B) (West Supp.1987).

### I

A copy of the "RBX Industries, Inc. Profit Sharing Plan" (the Plan) and all

1. Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 898 (codified in 29 U.S.C.A. §§ 1001, *et seq.* and scattered sections of the Internal Revenue Code).

facts essential to a resolution of the issues before the court have been stipulated by the parties. The "Stipulations For Trustee's Objection To Debtor's Claim Of Exemption" filed September 3, 1987, recites:[2]

1. The debtor, Ronald Duane Faulkner, filed a petition for relief under Chapter 7, Title 11, United States Code, on May 21, 1987.

2. On the date of his petition, the debtor was 30 years of age and had been an employee of RBX Industries, Inc., for eight years.

3. On the date of his petition, the debtor continued to work for RBX Industries, Inc.

4. In his Schedules A-2 and A-3, as amended, the debtor lists secured debts of $3,920.23 and unsecured debts of $12,990.60, respectively.

5. In his Schedule B-1 and Schedule B-2, as amended, the debtor lists no real property and lists personal property in the amount of $1,800.00.

6. In his Schedule B-2, as amended, the debtor lists, at a current value of "-0-," his interest in a profit sharing plan created by his employer, RBX Industries, Inc.

7. The debtor lists his total debts at $16,910.83 and his total property at $1,800.00.

8. In his Schedule B-4, as amended, the debtor claims as exempt, among other things, his interest in the profit sharing plan.

9. Exclusive of his interest in the profit sharing plan, the debtor lists no nonencumbered or nonexempt property.

10. The debtor's interest in the profit sharing plan is 70% vested.

11. The profit sharing plan qualifies under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954.

12. The profit sharing plan is an ERISA qualified plan.

13. The profit sharing plan provides that, except with respect to qualified domestic relations orders or with respect to loans to the debtor from the assets of the profit sharing plan, plan benefits may not be anticipated, assigned, alienated, or subjected to attachment, garnishment, levy, execution, or other legal or equitable process.

14. The debtor, upon retiring at the age of sixty-five years, is entitled to his benefits under the profit sharing plan.

15. The debtor's beneficiaries, as designated by him, are entitled to his benefits under the profit sharing plan in the form of death benefit distributions upon the debtor's death.

16. The debtor may terminate his employment before attaining the age of sixty-five, other than by death, and receive his vested interest in his account in the profit sharing plan, at his election, by lump sum, installment payments, or annuity purchase or conversion.

17. The debtor has the right to receive his vested interest no later than sixty days after the close of the Plan Year in which occurs the debtor's termination of employment.

18. The Plan Year is the twelve-month period commencing November 1 and ending October 31, annually.

19. The debtor may borrow from the assets of the profit sharing plan; the debtor's vested interest in his profit sharing plan account is security for his loans; the plan administrator may require additional security; and any outstanding loan and accrued interest shall be deducted at retirement, death, or termination of his employment from any benefit to which the debtor or his beneficiary is entitled under the plan.

20. On the date of his petition, the debtor's vested, nonforfeitable interest in his profit sharing plan account was $14,498.84.

21. On the date of his petition, the debtor was not receiving any payments from the profit sharing plan.

---

**2.** Paragraphs 22 and 23 of these stipulations are not material and are not duplicated in this

Memorandum.

Although the parties summarize certain provisions of the Plan in their stipulations, it is appropriate to set forth with specificity the following material provisions of the Plan:

6.03. *Termination of Employment Distributions.*

In the event a Participant terminates his employment before attaining age sixty-five, other than by death, his vested interest in his account shall be distributed as provided in the following subsections.[3]

(a) A terminated Participant may elect (with the written consent of his spouse in accordance with Plan section 6.06(d) if the Participant is then married and distribution of his benefit is subject to the survivor annuity rules) to receive the entire vested portion of his Basic Account, together with his Rollover Account, if any, in a single lump sum. An election pursuant to this subsection must be made in time to allow the distribution to be made not later than the close of the second Plan Year following the Plan Year in which the Participant terminates his employment. If the Participant requests and the Plan Administrator consents, the Trustee may transfer the vested account of a terminated Participant to another Qualified Plan or Trust that accepts such transfers.

. . . . .

6.04. *Forms of Benefit Payment.*

Unless Plan section 6.03 or 6.07 applies, each Participant shall have the right to elect to have the benefits to which he is entitled under the Plan paid under one of the options listed below,[4] effective August 23, 1984. If a Participant fails to make an effective election of an optional form of benefit payment, the Plan Administrator shall direct payment

in a lump sum unless Plan section 6.06 requires an annuity form of payment.

(a) *Lump Sum.* The value of the Participant's account, as of the applicable Valuation Date, shall be paid to him in a single lump sum.

. . . . .

6.09. *Limits on Assignment.*

(a) Except as allowed by Code section 401(a)(13) with respect to Qualified Domestic Relations Orders or by Plan section 7.06 with respect to loans, Plan benefits may not be anticipated, assigned (either at law or in equity), alienated, or be subject to attachment, garnishment, levy, execution, or other legal or equitable process.[5]

. . . . .

7.06. *Loans.*

(a) Any Participant may apply to the Plan Administrator in writing (on a form adopted by the Plan Administrator) for a loan from the Trust Fund. Upon receipt of a loan application, the Plan Administrator may direct the Trustee to make loans from the Trust Fund to the Participant under the remaining provisions of this section. In administering this Plan's loan rules, the Plan Administrator must treat similarly situated applicants in a like manner and not unreasonably discriminate between applicants (for example, on the basis of age or sex).

(b) Loans may be made under the provisions of this section for any reason approved by the Board so long as loans are made on a uniform and nondiscriminatory basis to all similarly situated Participants.

(c) Each loan made according to this Plan section must contain provisions for reasonable interest, adequate security, and repayment at a fixed maturity date. For any Plan loan, the Plan Administrator must direct the Trustee to obtain an

---

3. Subsections (b), and (c) of paragraph 6.03, providing alternative forms of distribution upon termination, are not recited.

4. Subsections (b), (c) and (d) of paragraph 6.04, providing alternative forms of benefit payment options, are not recited.

5. This anti-alienation and anti-assignment clause is essential in order for the Plan to meet the requirements of ERISA, 29 U.S.C.A. § 1056(d)(1) (West Supp.1987), and for the Plan to qualify for tax exempt status under the Internal Revenue Code, 26 U.S.C.A. § 401(a)(13) (West Supp.1987).

appropriate note. With the written consent of the Participant (and if the Participant is subject to the survivor annuity rules described in Plan section 6.06, with the consent of his spouse, if any), the vested value of the Participant's account is security for that Participant's loans from this Plan. The Plan Administrator may require additional security. If a Participant's account is security for a Plan loan, any outstanding loan and accrued interest shall be deducted at retirement, death, or other termination of employment from any benefit to which such Participant or his Beneficiary is entitled under the Plan.

(d) The Plan Administrator may adopt and announce additional loan rules not inconsistent with the provisions of this Plan section, such as rules relating to minimum amounts of loans as well as a maximum amount of the Trust Fund that may be made available for loans to all Participants.

It is also noted that the Plan is funded exclusively by contributions of the debtor's employer.

## II

The commencement of a bankruptcy case under title 11 of the United States Code creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1979 & Supp. 1987). The Bankruptcy Code further provides that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision ...—(A) that restricts or conditions transfer of such interest by the debtor." 11 U.S.C.A. § 541(c)(1)(A) (West Supp.1987). However,

§ 541(c)(2) provides for an exception to the general rule: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C.A. § 541(c)(2) (West Supp.1987).

This court, speaking through Judge Clive W. Bare, following the Eighth Circuit in *In re Graham*, 726 F.2d 1268 (1984), has previously determined that § 541(c)(2) is not preempted by ERISA and that the concept of a restriction "enforceable under applicable nonbankruptcy law" applies only to trusts qualifying as valid spendthrift trusts under relevant state law. *See In re Ridenour*, 45 B.R. 72 (Bankr.E.D.Tenn.1984).[6] In his decision in *Ridenour*, Judge Bare concluded in material part:

> As *Graham* makes clear, the ERISA provisions do not preempt federal law defining the § 541(c)(2) exclusion in terms of spendthrift trusts as defined and recognized under traditional state law....
>
> This court follows, then, the analysis of *Graham* and concludes that Congress intended to exclude from the debtor's estate under § 541(c)(2) only those ERISA-qualified pension plans which also constitute valid spendthrift trusts under relevant state law.

*In re Ridenour*, at 78 (footnote omitted).

Judge Ralph H. Kelley, speaking for this court out of its Southern Division, recently addressed the issue of ERISA-qualified pension plans under Tennessee law. Judge Kelley, in synopsizing the Tennessee law on spendthrift trusts, notes in material part:

> [I]n a true spendthrift trust protection flows from an express restriction on

---

6. Prior to *Ridenour* this court in *In re Holt*, 32 B.R. 767 (Bankr.E.D.Tenn.1983), held an employer-funded ERISA plan excludable from the debtor's estate under § 541(c)(2). This decision was based upon the Sixth Circuit's holding in *General Motors Corp. v. Buha*, 623 F.2d 455 (1980), that an ERISA pension plan was not subject to garnishment by a creditor acting under state judgment enforcement procedures since the ERISA provisions requiring anti-alienation and anti-assignment clauses preempted state laws relating to the plan. In *Holt* this

court concluded that an inquiry into whether the plan qualified as a spendthrift trust under state law was irrelevant. In reaching his contrary decision in *Ridenour*, Judge Bare noted that the Eighth Circuit's conclusion in *Graham* was subsequent to both *Buha* and *Holt*, and that he was "persuaded that ERISA's preemption of state law in the context of garnishment under state law is not necessarily dispositive in the context of federal bankruptcy law." *Ridenour* at 78.

transfer. G. Bogert. The Law Of Trust and Trustees § 221 (2d ed. rev. 1979).

Tennessee law allows true spendthrift trusts only under a statute. Tenn.Code Ann. § 26–4–101. Besides the statute's express requirements, the courts have added the requirement that the trust must be an "active" rather than a "dry" trust, which basically means that the property must be under the control of the trustee rather than the debtor-beneficiary. *Jourolmon v. Massengill,* 86 Tenn. 81, 5 S.W. 719 (1887); *First Nat'l Bank v. Nashville Trust Co.,* 62 S.W. 392 (Tenn.Ch.App.1901).

The courts have also said that the beneficiary must be limited to a right to receive income. *Howard v. United States,* 566 S.W.2d 521 (Tenn.1978), citing *Robertson v. Brown,* 13 Tenn.App. 211 (1931) (dictum). Surely the statute allows a donor to put money in trust to be paid out to the beneficiary. G. Bogert. The law Of Trusts and Trustees § 222 at 392–393 (2d ed. rev. 1979). The beneficiary in such a case has only a right to periodic payments, which is in a sense only a right to income. The beneficiary does not have control of the trust property. The trust is not necessarily a dry trust. It is not clear that the courts meant that the beneficiary must be limited to a right to the income earned by the trust principle.

*In re Elsea,* 47 B.R. 142, 148–149 (Bankr.E. D.Tenn.1985).

■ The debtor's pension plan in the case sub judice does not qualify as a spendthrift trust under Tennessee law. The anti-alienation and anti-assignment provisions of paragraph 6.09 of the Plan are qualified by the debtor's right to apply for a loan from the "Trust Fund." [7] Such loans are limited to participants in the Plan and are designed under paragraph 7.06(c) to be secured by the "vested value of the Participant's account." Further, again under paragraph 7.06(c), to the extent a "Plan loan" is secured by a Participant's account, "any outstanding loan and accrued interest shall be deducted at retirement, death or other termination of employment from any benefit to which such Participant or his Beneficiary is entitled under the Plan."

The clear impact of paragraph 7.06 of the Plan is to provide the debtor-participant ready access at any time to his vested interest in the Plan. One can easily envision a situation arising at the time a Plan participant becomes entitled to benefits under the Plan where those benefits have been fully encroached upon through loans under paragraph 7.06. The anti-alienation and anti-assignment provisions of paragraph 6.09 of the Plan have thus been avoided and rendered meaningless.

Further, paragraph 6.03(a) gives the debtor the right to terminate the Plan at any time prior to age 65, other than by death, and to receive "the entire vested portion of his Basic Account . . . in a single lump sum." Clearly, the debtor's vested interest in the trust property is not beyond the control of the debtor-beneficiary.[8]

The court concludes that the debtor's ready access to the vested portion of his Plan account either by termination of employment or through loans allows an impermissible control of the trust property by

---

7. "Trust Fund" is defined at paragraph 1.47 of the Plan as "the assets of the Plan held in trust by the Trustee pursuant to the terms of the Trust Agreement and the Plan."

8. In his "Brief In Support Of Debtor's Claim Of Exclusion" filed September 23, 1987, the debtor argues that this court in *In re Ridenour,* 45 B.R. 72 (Bankr.E.D.Tenn.1984), at n. 4, stated that even though the Plan in *In re Holt,* 32 B.R. 767 (Bankr.E.D.Tenn.1983), were found not to constitute a valid spendthrift trust under Tennessee law, "[t]he terms of the Plan described at 32 B.R. 767, 768 would clearly qualify it for exemption under the state exemption statute." The Plan in *Holt* provided for the payment of benefits after age 60 in quarterly installment payments with a proviso that the Administrative Committee of the Plan in its sole discretion might authorize an earlier distribution in the form of a lump sum payment, quarterly installments, or a combination thereof. While the statement of the court in *Ridenour* is dictum, it is nonetheless noteworthy that in *Holt* a premature distribution of benefits was wholly discretionary with the Administrative Committee, whereas in the instant case the debtor has an absolute right to receive the entire vested portion of his account in a lump sum upon termination.

the debtor, thus disqualifying the Plan as a spendthrift trust under Tennessee law. Accordingly, the exclusion of § 541(c)(2) is inapplicable and the $14,498.84 which constitutes the debtor's vested, nonforfeitable interest in the Plan is an asset of his estate.

### III

■ Having determined the vested portion of the debtor's Plan to be an asset of his estate, the remaining issue is whether the debtor is entitled to exempt his vested interest in the Plan from the estate. The statutory provision specifically relating to the exemption of pension plans is Tenn. Code Ann. § 26–2–111(1)(D) which provides:

[T]he following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

. . . . .

(D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service, unless:

(i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;

(ii) Such payment is on account of age or length of service; and

(iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409).

Provided, however, that the assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). *Assets of such funds or plans are not exempt if the debtor may, at his option, accelerate payments so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less.*

Tenn. Code Ann. § 26–2–111(1)(D) (1980) (emphasis added).

Paragraphs 6.03 and 7.06 of the Plan give the debtor the right to accelerate payment in a lump sum. Further, paragraph 6.04 of the Plan gives the debtor the right to elect to have the benefits to which he is entitled under the Plan paid in a single lump sum. Clearly the proviso bars the debtor from exempting the vested portion of his interest in the Plan under Tenn. Code Ann. § 26–2–111(1)(D) (1980).

The debtor is, however, entitled to claim $2,200 of his vested interest in the Plan as exempt under the provisions of Tenn. Code Ann. § 26–2–102 (1980).[9]

This Memorandum constitutes findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

---

9. Tenn. Code Ann. § 26–2–102 (1980) provides:
   **Personal property selectively exempt from seizure.**—Personal property to the aggregate value of four thousand dollars ($4,000) debtor's equity interest shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee, and such person shall be entitled to this exemption without regard to his vocation or employment. Such person may select for exemption the items of the owned and possessed personal property, including money and funds on deposit with a bank or other financial institution, up to the aggregate value of four thousand dollars ($4,000) debtor's equity interest. The debtor has previously been allowed $1,800 in personal property exemptions under this statute.

pursuit or to the ownership of his abode.