**In re Paul Don ELSEA, Sr., Debtor.**

**Bankruptcy No. 1–84–00051.**

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 26, 1985.

Richard P. Jahn, Jr., and Patrick C. Taintor, Tanner, Jahn, Anderson, Bridges, & Jahn, Chattanooga, Tenn., trustee.

C. George Caudle, Stophel, Caldwell, & Heggie, Chattanooga, Tenn., for debtor.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The trustee in bankruptcy has objected to the debtor's claim of a homestead exemption in property owned by the debtor and his wife as tenants by the entirety. The trustee also contends that pension funds held by the debtor's employer are part of the bankruptcy estate, and are not exemptable under Tennessee law.

### I.

■ As to the homestead exemption, the trustee seeks guidance on one question. If he is allowed to sell the debtor's right of survivorship in the property, is the debtor entitled to recover the dollar amount of the homestead exemption from the proceeds of the sale?

No.

There is no good practical reason to allow the homestead exemption from the proceeds of a sale of the right of survivorship. Sale of the right of survivorship will not deprive the debtor of the use of the property. That will occur only if the debtor is the survivor. Then the purchaser will be entitled to the property. By that time the debtor could already have spent a cash homestead exemption allowed when his survivorship interest was sold. The better approach is to sell the survivorship interest subject to the debtor's right to a homestead exemption if and when he is the survivor. *In re Shaw*, 5 B.R. 107, 6 B.C.D. 651, 2 C.B.C.2d 599. (Bankr.M.D.Tenn.1980). See also *In re Dawson*, 10 B.R. 680, 7 B.C.D. 603, 4 C.B.C.2d 615 (Bankr.E.D. Tenn.1981) aff'd sub. nom *Ray v. Dawson*, 14 B.R. 822, 5 C.B.C.2d 404 (D.C.E.D.Tenn. 1981). Judge Clive Bare of this district has recently entered an opinion agreeing with this conclusion. *In re Walls*, 45 B.R. 145, 12 B.C.D. 663 (Bankr.E.D.Tenn.,1984).

In the event the trustee sells the debtor's right of survivorship in the property in question, the debtor will not be entitled to a homestead exemption out of the proceeds.

### II.

The facts regarding the pension funds were stipulated by the parties as follows.

The debtor is a general career life underwriting agent for Shenandoah Life Insurance Company and has been employed in that capacity since 1959. Debtor is currently 54 years of age, and will turn 55 on November 27, 1985.

The Shenandoah Life Insurance Company ("Shenandoah") provides two retirement plans for the benefit of its general agents: the Shenandoah Life Field Underwriters' Retirement Plan ("Retirement Plan") and the Shenandoah Life Field Supplementary Retirement Plan ("Supplemental Plan"). Both of these plans are fully qualified under the Employee Retirement Income Security Act of 1974 (ERISA), and both qualify as tax-exempt plans under Internal Revenue Code Section (IRC), § 401(a).

Both the Retirement Plan and the Supplemental Plan contain the following nonalienation and nonassignment provision mandated by ERISA in order to qualify both plans as tax-exempt under ERISA and Section 401(a) of the Internal Revenue Code:

Notwithstanding any contrary provision, the transferability of this contract is restricted in accordance with provisions of the Internal Revenue Code and this contract may not be sold, assigned, discounted or pledged as collateral for a loan or as security for the performance of an obligation or for any other purpose to any person other than the Company when this contract is issued to qualify (a) under Section 403(b) of the Internal Revenue Code, (b) under the Self-Employed Persons Retirement Act of 1962 or (c) as the property of a trusteed or nontrusteed pension or profit-sharing plan qualified under Section 401(a) and exempt under 501(a) of the Internal Revenue Code, except that this contract may be assigned to the Annuitant pursuant to provisions of such pension or profit-sharing plan.

Both plans may be characterized as defined contribution plans, rather than defined benefit plans.

Debtor is a participant in both retirement plans.

Both plans provide for contributions to be made by Shenandoah for the benefit of the debtor, and the amount of these contributions is determined by the compensation earned by the debtor through his commissions on insurance policies sold. These contributions are in turn used to purchase or provide benefits for the debtor as a plan participant.

The Retirement Plan does not allow for voluntary contributions by the participants. The Supplemental Plan does allow voluntary contributions. The debtor, however, has not made any voluntary contributions into the Supplemental Plan. Accordingly, all the contributions to both plans have been made solely by Shenandoah.

Each plan provides for the payment of certain benefits to a participant upon the participant's reaching retirement age. The manner and method of the benefits are selected by the participant among several options provided under the plan and an accompanying annuity contract. Each plan provides four options. Each option is a contract under which annuity payments are paid to the participants. The participant elects, at will, the annuity formula, i.e. life, fixed years, etc.

Shenandoah has no administrative guidelines governing the payment of the Retirement Plan's benefits in a lump sum upon retirement of a plan participant. Shenandoah's past practice with respect to the Retirement Plan, however, has been generally to permit, upon request of a plan participant, the payout of the participant's account balance up to $40,000 in any one year.

The Supplemental Plan, on the other hand, allows a participant to elect a lump sum cash payment, meaning that the participant may receive his entire account balance immediately upon retirement. Any other form of payment requested by the participant can be made only with Shenandoah's consent.

Both Plans provide for a normal retirement at age 65. However, both Plans allow a participant, who has attained the age of 55 years and has completed at least 15 years of service (employment with Shenandoah) to elect an earlier retirement date, which retirement date may be the first day of any month prior to his reaching 65. Therefore, a participant may elect to retire at age 55, so long as he has worked for Shenandoah for a period of 15 years.

Debtor may elect an early retirement at age 55, since he has already completed 15 years of service with Shenandoah. If this election were made, he could receive his entire interest in the Supplemental Plan as early as December 1, 1985. In addition, if Shenandoah's past practice mentioned above is followed in this instance, the debtor could also receive up to $40,000.00 of his account balance in the Retirement Plan within one year of December 1, 1985.

In the event the debtor elects early retirement, debtor would be eligible for an insurance broker's license issued by Shenandoah, and, if such license were granted, would be permitted to operate as an independent contractor for Shenandoah. However, debtor will lose his disability and accidental death insurance and all Social Security contributions from Shenandoah, the face amount of his group life insurance policy would be reduced by 50% over a period of five years, and the debtor would retain reduced medical coverage.

As mentioned above, both plans are funded by Shenandoah through contributions based upon the compensation earned by the general agent through his commissions on insurance policies sold. The contribution for a participant in any calendar year is "approximately equal to the single premium for a paid-up deferred annuity commencing at normal retirement date [65 years of age]." Summary Plan Description, at Page D–3, *Retirement Benefits, Paragraph (1).* As noted by the Summary Plan Description, "[b]ecause single premiums increase with advancing age, the con-

tributions under the plan will be a greater percentage of earnings for the older than for the younger participants." *Id.* at *Paragraph (4).* Thus, should debtor retire early, debtor would lose the benefit of an increased rate in the growth of his Retirement Plan account.

Neither the Retirement Plan nor the Supplemental Plan allow the withdrawal of employer contributed funds by a participant prior to the retirement, and no participant may retire prior to the age of 55 years. Accordingly, the debtor may not presently withdraw any of the vested funds from his account in either the Retirement Plan or the Supplemental Plan. He may do so only when he reaches the age of 55 years.

Debtor is fully (100%) vested in the benefits under both retirement plans. The debtor's balance in each of the plan accounts is reported quarterly, and the balance of the debtor's account in the Retirement Plan was $36,962.26 as of December 31, 1983. The balance in the Supplemental Plan as of the same date was $15,917.66. The total amount of such balances, as of December 31, 1983, was $52,879.92. Debtor filed his chapter 7 petition in bankruptcy on January 16, 1984. Since such date, debtor's account balances have increased through earnings and any additional contributions made by Shenandoah.

### Discussion

The court must first decide whether the debtor's rights under the pension plans are exemptable. Section 522(d)(10)(E) of the Bankruptcy Code does not control. 11 U.S.C.A. § 522(d)(10)(E). The Tennessee exemption statute applies. 11 U.S.C.A. § 522(b); Tenn.Code Ann. § 26–2–112. It provides:

[T]he following shall be exempt from execution, seizure or attachment ...:

(1) The debtor's right to receive:

.    .    .    .    .

(D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profit sharing, annuity or similar plan or contract on account of death, age or length of service, unless:

(i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;

(ii) Such payment is on account of age or length of service, and

(iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code....

Provided, however, that the assets of the fund from which any such payments are made, or to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds are not exempt if the debtor may, at his option, accelerate payment in a lump sum or in periodic payments over a period of sixty (60) months or less.

Tenn.Code Ann. § 26–2–111(1)(D).

■ The proviso can be confusing in its treatment of assets as something different from a right to payment. The court thinks, however, that the proviso was intended to apply and effectively denies the debtor any exemption of his right to payment under the plans in question.

The much harder question is whether the debtor's interest in the pension plans is excluded from the bankruptcy estate by Bankruptcy Code § 541(c)(2). 11 U.S.C.A. § 541(c)(2).

■ ERISA and § 401 of the Internal Revenue Code (IRC) provide that a pension plan can qualify under either statute only if it includes a restriction or transfer of the beneficiary's interest. The statutes do not specifically require a so-called "spendthrift" restriction that prohibits creditors from using garnishment, attachment, execution, or other process to collect the beneficiary's debt directly from the administrator of the pension plan. However, the rule

has developed that a spendthrift restriction is required and is enforceable against creditors. 29 U.S.C.A. § 1056(d): 26 U.S.C.A. § 401(a)(13); 26 C.F.R. § 1.401(a)–13; *United States v. Buha,* 623 F.2d 455 (6th Cir.1980).

The quoted provision of the pension plans includes the spendthrift restriction by referring to the statutory requirements. Thus, both pension plans effectively prohibit creditors from seizing the debtor's interest in the plans for the payment of his debts. The question is how this prohibition affects the rights of the trustee in bankruptcy in the debtor's bankruptcy case.

■ Bankruptcy Code § 541(a) creates a bankruptcy estate composed of the debtor's interests in property. Section 541(a)(1) is broad enough to bring in the debtor's interest in the pension plans unless his interest is excluded by the reference to § 541(c)(2).

Section 541(c)(2) excludes the debtor's beneficial interest in a trust to the extent it is subject to restrictions on transfer that are "enforceable under applicable nonbankruptcy law".

Specifically, §§ 541(a)(1) and (c)(2) provide:

(a) The commencement of a case under ... this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

.    .    .    .    .

(c) ...

(2) A restriction on transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C.A. § 541(a)(1) & (c)(2).

In cases involving pension plans such as these the courts have treated the debtor's interest in the plan as a beneficial interest in a trust. That leaves the question under § 541(c)(2) of whether the spendthrift provision is enforceable against the bankruptcy trustee under § 541(c)(2).

In a recent decision, Judge Clive Bare of this district discussed the answers given by the courts. *In re Ridenour,* 45 B.R. 72 (Bankr.E.D.Tenn.1984). Some courts have held that since the ERISA spendthrift restriction is enforceable against creditors outside of bankruptcy, then it is enforceable against the bankruptcy trustee. This means that a debtor's interest in a qualified pension plan would always be excluded from the bankruptcy estate.

Other courts have held that the spendthrift restriction in a qualified pension plan does not prevent the debtor's interest from coming into the bankruptcy estate. This conclusion is based primarily on the legislative history of § 541(c)(2) and on § 522(d)(10)(E).

The legislative history of § 541(c)(2) says that it was intended to preserve spendthrift trusts. S.Rep.No., 95–989, 95th Cong., 2d Sess. 83 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963. However, the spendthrift clause required in a qualified plan is not enough by itself to make a pension plan satisfy the state law requirements for a spendthrift trust.

Section 522(d)(10)(E) provides a limited exemption for payments under a qualified pension plan. An exemption would not be needed if the payments were excluded from the estate by § 541(c)(2).

Thus, even though § 541(c)(2) is broad enough to automatically exclude a debtor's interest in a qualified pension plan, Congress may not have intended that result. Rather than say a qualified plan is never protected or is automatically protected under § 541(c)(2), the rule adopted by Judge Bare is that a qualified pension plan is protected if it meets the state law requirements for a spendthrift trust. *In re Graham,* 726 F.2d 1268 (8th Cir.1984).

Of course, if the debtor's interest is not excluded by § 541(c)(2) under this rule, it may still be exempt or partially exempt

depending on what the exemption statutes allow.

Referring to the state law requirements for a spendthrift trust allows the courts to recognize the unfairness to creditors of protecting a debtor's interest in certain qualified plans. Apparently a qualified plan may allow the beneficiary an unrestricted right to payment before retirement, disability, or termination of employment, as to funds contributed by the beneficiary. Compare *In re Threewitt*, 24 B.R. 927, 9 B.C.D. 1225, 8 C.B.C.2d 890 (D.C.D. Kan.1982) rev'g 20 B.R. 434, 9 B.C.D. 38, 6 C.B.C.2d 903 (Bankr.D.Kan.1982), and *In re Berndt*, 34 B.R. 515 (Bankr.W.D.Ind.1983).

If this right is excluded from the bankruptcy estate by § 541(c)(2), then the debtor can put his money beyond the reach of his creditors while he retains the free right to use the money. This is not only unfair to creditors but is also completely at odds with the state law justifications for a spendthrift trust.

On the other hand, this reference to state law may cause more problems than it solves. ERISA and § 401 of the IRC reveal Congress's intent that a person's interest in a qualified pension plan should not be subject to the claims of his creditors without regard to which state the person resides in. On the basis of slim evidence, the courts would hold that in bankruptcy cases various inconsistent state laws determine whether interests in qualified plans are protected from claims of the beneficiaries' creditors. The interest of a beneficiary in one state might be protected while the interest of another beneficiary of the same plan might not be protected because he lived in a different state.

Consider the pension plans in question under Tennessee law.

■ Tennessee law apparently recognizes so-called discretionary trusts. *Staub v. Williams*, 73 Tenn. 458 (1880). See also *Davis v. Mitchell*, 27 Tenn.App. 182, 178 S.W.2d 889 (1943); *First National Bank v. Nashville Trust Co.*, 62 S.W. 392 (Tenn.Ch. App.1901). A debtor's interest in a discre-tionary trust is free from the claims of his creditors because the trustee's discretion as to whether to make payments deprives the beneficiary of any interest that can be anticipated. Restatement (Second) Trusts §§ 154 & 155 (1959). These pension plans obviously do not qualify as discretionary trusts.

Discretionary trusts and true spendthrift trusts are both justified partly on the same ground—that when the trust property is donated by someone other than the beneficiary then the restriction on rights of the beneficiary's creditors does not deprive them of any property that they could otherwise have collected from. *J.S. Menken Co. v. Brinkley*, 94 Tenn. 721, 31 S.W. 92 (1895); *State ex rel. v. Nashville Trust Co.*, 28 Tenn.App. 388, 190 S.W.2d 785 (1944); 76 Am.Jur.2d, Trusts § 154 (1975). The difference between the kinds of trusts is that in a discretionary trust the nature of the beneficiary's interest protects it from his creditors but in a true spendthrift trust protection flows from an express restriction on transfer. G. Bogert. The Law of Trusts and Trustees § 221 (2d ed.rev.1979).

■ Tennessee law allows true spendthrift trusts only under a statute. Tenn. Code Ann. § 26-4-101. Besides the statute's express requirements, the courts have added the requirement that the trust must be an "active" rather than a "dry" trust, which basically means that the property must be under the control of the trustee rather than the debtor-beneficiary. *Jourolmon v. Massengill*, 86 Tenn. 81, 5 S.W. 719 (1887); *First National Bank v. Nashville Trust Co.*, 62 S.W. 392 (Tenn.Ch.App. 1901).

The courts have also said that the beneficiary must be limited to a right to receive income. *Howard v. United States*, 566 S.W.2d 521 (Tenn.1978), citing *Robertson v. Brown*, 13 Tenn.App. 211 (1931) (dictum). Surely the statute allows a donor to put money in trust to be paid out to the beneficiary. G. Bogert, The law of Trusts and Trustees § 222 at 392–393 (2d ed.rev.1979). The beneficiary in such a case has only a right to periodic payments, which is in a

sense only a right to income. The beneficiary does not have control of the trust property. The trust is not necessarily a dry trust. It is not clear that the courts meant that the beneficiary must be limited to a right to the income earned by the trust principal.

In any event, the pension plans in question provide benefits by means of a group annuity contract under which each participant has a separate account. Under an annuity contract, the annuitant does not have a claim to any principal in trust in the normal sense but only a right to receive payments due under the contract. Since the trust in effect holds an annuity contract, the debtor only has a right to income.

The statute, however, is limited to trusts established by recorded will or registered deed. *White v. O'Bryan*, 148 Tenn. 18, 251 S.W. 785 (1923). Thus, the pension plans in question do not qualify under the statute.

The court, however, sees no special unfairness in holding that the pension plans in question are not subject to the claims of the debtor's creditors.

The debtor did not have free access to the funds before retirement.

The money was contributed by someone other than the debtor, specifically by the debtor's employer. This is not changed by the fact that the employer's contributions were determined by the amount of the debtor's commissions. The debtor doubtlessly set out to earn commissions to make a living, without trying to earn more or less in order to vary his employer's contributions to the pension plans. Contributions to the pension plans were only coincidental, fringe benefits.

The beneficiary of a spendthrift trust can have a definite right to periodic payments. *Porter v. Lee*, 88 Tenn. 782, 14 S.W. 218 (1890). This is one difference between a spendthrift trust and a discretionary trust. The creator of a spendthrift trust should also be allowed to make the trust last for a definite time after which the trustee must convey to the beneficiary.

Restatement (Second) of Trusts § 153 (1959). The court sees no reason for denying the beneficiary a right to choose among several methods of receiving benefits. This does not give the beneficiary a free right to withdraw property from the trust.

Control of the trust property while it supposedly remains in trust is the focus of the control question. The facts argued by the trustee do not show that the debtor could control the pension funds before his right to receive them accrued on retirement.

Though the court believes there is no special unfairness in protecting these pension funds from the bankruptcy trustee, that result cannot be reached if the Tennessee statute by itself determines whether the plans are spendthrift trusts under Tennessee law.

The Tennessee courts, however, might treat the pension plans as spendthrift trusts if they considered the spendthrift clause required by ERISA but did not treat it as automatically binding. The Tennessee courts recognize spendthrift trusts under the Tennessee statute. These pension plans meet the main requirement of the Tennessee statute since they were not funded by the beneficiary. They meet the requirement as to the beneficiary's lack of control. The requirement that the trust be created by recorded will or registered deed is in effect a requirement of public notice of the limits on the rights of the beneficiary and his creditors. *Jourolmon v. Massengill*, 86 Tenn. 81, 109, 5 S.W. 719 (1887). Is there a reasonably well-informed creditor anywhere who does not know of ERISA and its limitations on creditors' rights in the trust property? The court thinks that the federal statutes themselves satisfy the notice function. The court concludes that the Tennessee courts would treat these particular pension plans as spendthrift trusts.

The court leaves open the question of whether the same result would be reached in another case to the extent the debtor contributed the funds or had unrestricted

access to them before retirement, disability, or termination of employment.

The court will enter an order that the trustee has no interest in the pension funds in question.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.