In re Willie Edward Barrett
CASSADA, Debtor.

Scott N. BROWN, Jr., Trustee in
Bankruptcy, Plaintiff,

v.

WESTVACO CORPORATION, Bankers
Trust Company, and Willie Edward
Barrett Cassada, Defendants.

Bankruptcy No. 1–86–00856.
Adv. No. 1–86–0240.

United States Bankruptcy Court,
E.D. Tennessee.

May 12, 1988.

Scott N. Brown, Jr., of Brown, Dobson, Burnette & Kesler, Chattanooga, Tenn. for plaintiff.

Thomas E. Ray, of Ray & North, P.C., Chattanooga, Tenn., for defendant, Willie Edward Barrett Cassada.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

This is a suit by a trustee in bankruptcy to recover the bankrupt debtor's interest in two retirement accounts.

The retirement plans were established by the debtor's employer and are qualified under federal tax law and perhaps under ERISA, the Employee Retirement Income Security Act.

In order for each plan to qualify under federal law, it included a spendthrift clause. The spendthrift clause provides that the debtor's creditors cannot seize the retirement account to collect their debts.

The debtor argues that the spendthrift clause and Bankruptcy Code § 541(c)(2) exclude the retirement accounts from the bankruptcy estate. In the alternative, the debtor argues that the accounts are exempt under Tennessee law.

The debtor's employer, Westvaco Corporation, and the trustee of the retirement plan, Bankers Trust Company, have not defended.

The parties have stipulated the following facts.

The debtor has been a salaried employee of the Westvaco Corporation for several years. Westvaco has established several retirement plans for salaried employees, including a deferred income plan and a stock ownership plan.

When the debtor filed his bankruptcy petition he had money in both the deferred income plan and the stock ownership plan. Westvaco had not made any contributions to either plan. All the money arose from the debtor's voluntary contributions and interest or dividends on his contributions.

The debtor had approximately $5,100 in the deferred income plan and $2,500 in the stock option plan when he filed his bankruptcy petition. By the time of the pre-trial conference, the $5,100 in the deferred income plan had increased to approximately $6,800.

The trustee seeks to obtain only the money in the plans when the debtor filed bankruptcy and the interest and dividends on that money. He does not seek to recover any contributions made by the debtor after bankruptcy or the interest and dividends on the contributions made after bankruptcy.

Neither retirement plan was created by a recorded will or registered deed as required by Tennessee law to make it enforceable against the debtor's creditors as a spendthrift trust.

As to the stock ownership plan, the debtor can withdraw his money only on death or when his employment is terminated.

As to the deferred income plan, the money can be paid out on the debtor's death or when his employment is terminated. He can obtain a payment or a loan earlier if he proves to the hardship committee that he has a severe need for cash that is causing a hardship. The hardship committee may allow an employee to withdraw money from the deferred income plan if he proves a financial hardship resulting from medical expenses, educational expenses, the purchase of a home, or any other cause of a severe need for cash.

## DISCUSSION

■ To the extent the debtor can exempt his interest in either retirement account, the court need not consider whether it is excluded from the bankruptcy estate by Bankruptcy Code § 541(c)(2).

The relevant exemption is provided by a Tennessee statute. Tenn.Code Ann. § 26–2–111(1)(D).[1]

The Tennessee exemption statute creates two exemptions for a stock bonus, pension, profit sharing, annuity, or similar plan or contract. The first exemption applies to payments from a plan. The second exemption applies to the assets from which payments may be made. The court is first concerned with whether or not the debtor can exempt the assets—the retirement accounts themselves.

The statute provides that the assets are exempt to the extent the debtor has no right or option to receive them in any man-

1. "In addition to the property exempt under § 26–2–102, the following shall be exempt ...:

   (1) The debtor's right to receive:
   ....
   (D) To the same extent earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of death, or length of service, unless:

   (i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;

   (ii) Such payment is on account of age or length of service; and

   (iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code....
   Provided, however, that the assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at his option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less."

ner except as periodic payments beginning at age 58 or later. The statute adds an additional limitation. The assets are not exempt if the debtor has the option to accelerate payment and receive all the assets in a lump sum or in periodic payments over a period of 60 months or less.

Under these rules, can the debtor exempt either retirement account?

The stipulated facts say that the money in either plan can be paid out on the debtor's death or termination of his employment. This apparently means that the debtor or his beneficiary will be entitled to a lump sum payment of all the account on termination of the debtor's employment or on the debtor's death.

The right or option of the debtor's beneficiary to a lump sum payment on the debtor's death would make the assets not exempt from the claims of the beneficiary's creditors. It does not give the debtor himself the right or option to a lump sum payment and does not prevent the assets from being exempt.

The right to a lump sum payment on termination of the debtor's employment raises a more difficult question. When a third party has control over whether the debtor can obtain a payment, the debtor may not have a right or option that would prevent the account from being exempt. Compare *In re Ridenour*, 45 B.R. 72 at note 4 (Bankr.E.D.Tenn.1984) and *In re Faulkner*, 79 B.R. 362 at note 8 (Bankr.E.D.Tenn.1987). Thus, the debtor might be able to exempt the accounts if his right to a lump sum payment would arise only on the involuntary termination of his employment. The statute is unclear on this point.

Furthermore, the court assumes that termination of employment includes voluntary termination. The debtor can argue that he should not be denied the exemption if he can obtain a lump sum payment only by quitting his job. The debtor may be right as a matter of policy, but the Tennessee legislature apparently has decided the policy against him.

The exemption statute is aimed at preserving the assets so that they can be used to make periodic payments beginning at age 58 or later and continuing for more than 60 months. If the debtor can obtain all the assets by voluntarily leaving his employment, then the exemption will not necessarily preserve the assets for periodic payments beginning at age 58 or later and continuing for more than 60 months.

Suppose the debtor simply finds a better job or no longer needs to work. He voluntarily quits his job and becomes entitled to a lump sum payment of either account. His voluntary unemployment is not a penalty the debtor has to suffer in order to obtain the right to a lump sum payment.

The court concludes that the debtor's right to a lump sum payment of the total of either account on the voluntary termination of his employment renders both accounts not exempt. *In re Faulkner*, 79 B.R. 362 (Bankr.E.D.Tenn.1987).

In light of this decision, the court need not decide whether the debtor can exempt the deferred income account on the theory that the hardship committee's control over payments deprives the debtor of any right or option to full payment before age 58 or over a period of 60 months or less.

The stipulated facts do not mention at what age the debtor can retire or how he can withdraw the funds on retirement. The court must emphasize, however, that postponement of the right to retire until age 58 or later does not automatically make a retirement account exempt. The account is still not exempt if the debtor, when he retires, can withdraw the total in one lump sum or in periodic payments over a period of 60 months or less. *In re Clark*, 18 B.R. 824, 827–28 (Bankr.E.D.Tenn.1982).

The debtor has argued that the assets in the deferred compensation account should be exempt since he has the option to take them in periodic payments which would be exempt under the payments exemption.

The exemption in payments appears to apply only when the debtor is already receiving payments. It might also apply when the debtor has made a choice to receive payments in a manner that will make all or a portion of the payments exempt *and* the debtor can not change his choice to

some method that would make the assets not exempt. *In re Clark,* 18 B.R. 824 (Bankr.E.D.Tenn.1982). Neither of these situations is present in this case.

■ Since neither account is exempt under the Tennessee statute, the court must decide if either is excluded from the bankruptcy estate by Bankruptcy Code § 541(c)(2). 11 U.S.C. § 541(c)(2).[2]

Section 541(c)(2) is sometimes referred to as the spendthrift trust provision. Under state law, an enforceable spendthrift trust prevents a creditor of the beneficiary from collecting the debt by seizing the trust property while it is still in the trustee's possession. The beneficiary's creditor can only wait and hope to collect from the beneficiary after he has received money or property from the trust.

Section 541(c)(2) applies when the beneficiary of a spendthrift trust goes bankrupt. It says that a spendthrift clause which would be enforced by the state or federal courts, if there were no bankruptcy case, is enforceable in the beneficiary's bankruptcy case. In other words, if the creditors could not take the trust property to collect their debts if there were no bankruptcy case, then they cannot take the trust property in the bankruptcy case, and neither can the bankruptcy trustee. The effect is the same as excluding the trust property from the bankruptcy estate. D. Seiden, ERISA V. BANKRUPTCY CODE, 61 Am.Bankr.L.J. 219, 236–37 (1987).[3]

The courts have had the most difficulty with § 541(c)(2) when the spendthrift trust is a retirement plan qualified under the federal tax law or ERISA. There are too many cases to cite here.

A qualified retirement plan must include a spendthrift clause, and federal law makes the clause enforceable. *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980).

There would be no great problem with enforcing these spendthrift retirement plans if qualifying under the federal law also required conditions, such as those imposed by state law, that guarantee at least a modicum of fairness to creditors of the beneficiary. For example, Tennessee law does not allow a person to put his own property in a spendthrift trust with himself as beneficiary. The rationale is that a person cannot put his property beyond the reach of his creditors and still have the use of it for his personal benefit, but if the money comes from someone else, then the beneficiary's creditors are not deprived of any property that the beneficiary would necessarily have had. Tennessee law also requires that the beneficiary cannot have control of the trust property. The rationale apparently is that control of the property while it is in the trust would be essentially the same as ownership, as if there were no trust. *In re Elsea,* 47 B.R. 142 (Bankr.E.D.Tenn.1985).

The federal law, however, allows qualified retirement plans that amount to little more than spendthrift checking accounts. The beneficiary can put his own money in a retirement account and withdraw it practically at will, but his creditors can't reach it. Furthermore, § 541(c)(2) appears to insulate this kind of plan from the claim of creditors even when the beneficiary has chosen the dire (to creditors) remedy of bankruptcy.

■ The courts have often disagreed with this interpretation of § 541(c)(2). The wording of § 541(c)(2) is broad enough to give effect in bankruptcy to the spendthrift clause in any qualified retirement plan, but the courts have held that § 541(c)(2) was intended to protect only traditional state-law spendthrift trusts. Thus, the rule has developed that a qualified retirement plan will be protected by § 541(c)(2) only if it meets the state law requirements for a

**2.** "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title".

**3.** For convenience, the court has not given the full title of the article—"Chapter 7 Cases: Do Erisa and the Bankruptcy Code Conflict as to whether a Debtor's Interest in or Rights Under a Qualified Plan Can Be Used to Pay Claims?" The article is in two parts in the Summer and Fall, 1987, issues of the American Bankruptcy Law Journal.

spendthrift trust. This rule can be criticized on several grounds. D. Seiden, ERISA V. BANKRUPTCY CODE, 61 Am. Bankr.L.J. 219, 323–340 (1987).

Nevertheless, it is clearly the rule in this district. *In re Faulkner*, 79 B.R. 362 (Bankr.E.D.Tenn.1987); *In re Elsea*, 47 B.R. 142 (Bankr.E.D.Tenn.1985); *In re Ridenour*, 45 B.R. 72 (Bankr.E.D.Tenn.1984).

In *In re Elsea*, this court relaxed the rule by holding that a qualified plan may be treated as a spendthrift trust under § 541(c)(2) if it meets the requirements of Tennessee law except creation by a recorded will or registered deed. Tenn.Code Ann. § 26–4–101; *In re Elsea*, 47 B.R. 142, 149 (Bankr.E.D.Tenn.1985).

The trustee in bankruptcy seeks to recover from each account only the amount contributed by the debtor before bankruptcy and the earnings on that amount. The accounts do not qualify as spendthrift trusts to that extent, since Tennessee law does not allow a person to put his money in a spendthrift trust for himself as beneficiary. Thus, § 541(c)(2) does not apply. *In re Ridenour*, 45 B.R. 72 (Bankr.E.D.Tenn. 1984); *In re Clark*, 18 B.R. 824 (Bankr.E. D.Tenn.1982).

The hardship committee's control over payments from the deferred income account before the debtor's death, retirement, or termination of employment, could be the basis for arguing that the deferred compensation account is a discretionary trust. Tennessee law recognizes a discretionary trust as another kind of trust that is not subject to collection attempts by the beneficiary's creditors. However, a discretionary trust, like a spendthrift trust, cannot be created by the beneficiary using his own property. *In re Elsea*, 47 B.R. 142 (Bankr. E.D.Tenn.1985). Thus, the deferred compensation account is not protected by § 541(c)(2) as a discretionary trust under Tennessee law.

The trustee is entitled to recover the debtor's pre-bankruptcy contributions to the two accounts and the earnings on those contributions. The trustee will likewise be liable to pay out of the amounts recovered any tax imposed on the withdrawal.

The trustee shall submit an order accordingly.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.