# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### March 23, 2011 Session

## PATRICIA ANN GHO MASSEY v. GREGORY JOEL CASALS

**Direct Appeal from the Juvenile Court for Shelby County**
**No. F7887    Herbert Lane, Special Judge**

---

### No. W2010-00284-COA-R3-JV - Filed May 3, 2011

---

Appellant  filed a motion to quash garnishment of his individual retirement accounts to satisfy an award of attorney's fees to Appellee, asserting the accounts were exempt pursuant to Tennessee Code Annotated §§ 26-2-105 and 26-2-111.  The trial court denied the motion to quash.  We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Linda J. Casals, Memphis, Tennessee, for the appellant, Gregory Joel Casals.

Rachael Emily Putnam, Memphis, Tennessee, for the appellee, Patricia Ann Gho Massey.

### OPINION

This appeal is the latest chapter in a long saga between these parties.  In 2005, Appellee Patricia Ann Gho Massey (Ms. Massey), filed a petition in the Shelby County Juvenile Court to modify Appellant Gregory Joel Casals' obligation for support of the parties' child born in May 1994.  In July 2008, the Shelby County Juvenile Court entered an order modifying Mr. Casals' child support obligation and ordering him to pay Ms. Massey's attorney's fees in the amount of $22,214.  Mr. Casals appealed the juvenile court's order increasing his child support obligation and awarding attorney's fees to Ms. Massey.  Mr. Casals also filed a motion in the trial court to stay the judgment pending appeal.  The trial court denied Mr. Casals' motion to stay.  We affirmed the judgment of the juvenile court, including the award of attorney's fees. *Massey v. Casals*, 315 S.W.3d 788 (Tenn. Ct. App. 2009).

The present appeal concerns the garnishment of accounts held by Mr. Casals with E*Trade

Bank to satisfy the award of attorney's fees to Ms. Massey. In November 2008, an officer of the juvenile court caused to be issued a garnishment of Mr. Casals' accounts with E*Trade Bank in order to satisfy the award. An amended garnishment was issued in January 2009. On January 27, 2009, Mr. Casals filed a motion to quash the writ of garnishment on the grounds that the accounts were exempt from garnishment under Tennessee Code Annotated § 26-2-105 and/or § 26-2-111. He also asserted that the juvenile court's order was not a final judgment because the matter was pending in this Court. Ms. Massey's legal counsel, Rachael E. Putnam (Ms. Putnam) filed a response in February 2009. In her response, Ms. Putnam asserted that the court's July 2008 order became a final order thirty days after it was entered where the judgment had not been stayed. She further asserted that Mr. Casals' accounts were not exempt from garnishment under § 26-2-105 or § 26-2-111. Following a hearing in March 2009, Referee Sheldon McCall dismissed Mr. Casals' motion to quash. Mr. Casals filed a request for a hearing before the judge, and in March 2009 filed a motion to stay the matter pending appeal of the court's denial of his motion to quash. In his motion, he asserted that he would incur a tax penalty in the amount of $5,000 if the garnished funds were not returned to his E*Trade IRA account. The matter was heard by a special judge in December 2009. In February 2010, the special judge reconfirmed the referee's ruling as the decree of the court and dismissed Mr. Casals' motion to quash. Mr. Casals filed a notice of appeal to this Court.

### Issue Presented

The determinative issue presented by this appeal, as we perceive it, is whether the trial court erred by determining that Mr. Casals' accounts were not exempt from garnishment pursuant to Tennessee Code Annotated §§ 26-2-105 and 26-2-111.

### Standard of Review

This matter presents both questions of fact and law. We review the trial court's findings of fact *de novo* upon the record, with a presumption of correctness. Tenn. R. App. P. 13(d). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). To preponderate against a trial court's finding of fact, the evidence must support another finding of fact with greater convincing evidence. *Mosley v. McCanless*, 207 S.W.3d 247, 251 (Tenn. Ct. App. 2006). We review the trial court's determinations on questions of law, and its application of law to the facts, *de novo*, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

The construction of a statute also is a question of law which we review *de novo*, with no presumption of correctness attached to the determination of the trial court. *Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009). When interpreting a statute, we seek to ascertain and effectuate the legislature's intent, neither unduly restricting nor expanding the statute beyond its intended scope in light of the context of the entire statute and the natural and ordinary meaning of the statutory language. *Hathaway v. First Family Fin. Servs., Inc.*, 1 S.W.3d 634, 640 (Tenn. 1999) (citations

omitted); *JJ & TK Corp. v. Bd. of Comm'rs*, 149 S.W.3d 628, 630-31 (Tenn. Ct. App. 2004) (citations omitted). When the language of the statute is clear, we must utilize the plain, accepted meaning of the words used by the legislature to ascertain the statute's purpose and application. If the wording is ambiguous, however, we must look to the entire statutory scheme and at the legislative history to ascertain and effectuate the legislature's intent and purpose. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (citations omitted).

### *Discussion*

We begin our discussion by noting that this appeal concerns the application of the exemptions from garnishment provided by Tennessee Code Annotated §§ 26-2-105 and 26-2-111 to an award of attorney's fees in an action to modify child support. It does not concern garnishment of accounts to satisfy a child support order.

Tennessee Code Annotated § 26-2-105(b) provides:

> Except as provided in subsection (c), any funds or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under §§ 401(a), 403(a), 403(b), 408 and 408A, or an Archer medical savings account qualified under § 220 or a health savings account qualified under § 223 of the Internal Revenue Code of 1986, as amended, are exempt from any and all claims of creditors of the participant or beneficiary, except the state of Tennessee. All records of the debtor concerning such plan and of the plan concerning the debtor's participation in the plan, or interest in the plan, are exempt from the subpoena process.

Tenn. Code Ann. § 26-2-105 (Supp. 2010). This provision is limited by subsection 105(c), which provides that, any plan described in subsection 105(b), except a public plan under subsection 105(a), is not exempt from the claims of an alternate payee under a qualified domestic relations order. Thus, subject to statutory limitations, Mr. Casals' accounts with E*Trade are exempt from garnishment to satisfy a judgment for attorney's fees if they constitute a retirement plan that is qualified under the enumerated sections of the Internal Revenue Code.

In his brief to this Court, Mr. Casals asserts that the undisputed proof in this case is that his E*Trade accounts qualify as retirement accounts under section 408 of the Internal Revenue Code. This section currently provides, in pertinent part:

> (a) Individual retirement account.--For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:
>> (1) Except in the case of a rollover contribution described in subsection (d)(3) in section 402(c), 403(a)(4), 403(b)(8), or 457(e)(16), no

contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A).

(2) The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.

(3) No part of the trust funds will be invested in life insurance contracts.

(4) The interest of an individual in the balance in his account is nonforfeitable.

(5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.

(6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.

26 U.S.C.A. § 408(a).

In her brief to this Court, Ms. Massey asserts that the accounts at issue are not IRA accounts that are exempt from garnishment under the statutes. Ms. Massey contends that opinions of the United States Bankruptcy Court stand for the proposition that, pursuant to Tennessee Code Annotated § 26-2-111(1)(D), Mr. Casals' accounts do not qualify for the exemption provided in § 26-2-105.

Tennessee Code Annotated § 26-2-111 provides:

In addition to the property exempt under § 26-2-103, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:
(1) The debtor's right to receive:
(A) A social security benefit, unemployment compensation, a Families First program benefit or a local public assistance benefit;
(B) A veterans' benefit;
(C) A disability, illness, or unemployment benefit, or a pension that vests as a result of disability;
(D) To the same extent that earnings are exempt pursuant to § 26-2-106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service, unless:
(i) Such plan or contract was established by or under the

auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;

(ii) Such payment is on account of age or length of service; and

(iii) Such plan or contract does not qualify under §§ 401(a), 403(a), 403(b), 408, 408A, or 409 of the Internal Revenue Code of 1954 [26 U.S.C. §§ 401(a), 403(a), 403(b), 408, 408A or 409];

The assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at the debtor's option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less;

(E) Alimony to the extent that payment becomes due more than thirty (30) days after the debtor asserts a claim to such exemption in any judicial proceeding; and

(F) Child support payments to the extent that payment becomes due more than thirty (30) days after the debtor asserts a claim to such exemption in any judicial proceeding;

(2) The debtor's right not to exceed in the aggregate fifteen thousand dollars ($15,000) to receive or property that is traceable to:

(A) An award not to exceed five thousand dollars ($5,000) under a crime victim's reparation law;

(B) A payment, not to exceed seven thousand five hundred dollars ($7,500) on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

(C) A payment not to exceed ten thousand dollars ($10,000) on account of the wrongful death of an individual of whom the debtor was a dependent;

(3) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(4) The debtor's aggregate interest, not to exceed one thousand nine hundred dollars ($1,900) in value in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor;

(5) Professionally prescribed health care aids for the debtor or a dependent of the debtor; and

(6) Liquid assets, stocks or bonds, to the extent of the amount of any obligations owed by the debtor pursuant to any final court order or judgment for child support.

The exemption shall be effective as of the date such exemption is claimed by the debtor or by an intervening representative of the child or children to whom such support is owed. Further, this exemption is only valid if such assets are immediately deposited into court by the debtor or immediately executed upon, seized or attached on behalf of the child or children for the partial or full satisfaction of child support obligations.

Tennessee Code Annotated § 26-2-111(Supp. 2010).

Ms. Massey cites *In Re Peeler*, 37 B.R. 517 (Bankr. M.D. Tenn. 1984), *In Re Paul Don Elsea*, 47 B.R. 142 (Bankr. E.D. Tenn. 1985), and *In Re Willie Edward Barrett Cassada v. Westvaco Corporation, Bankers Trust Company and Willie Edward Barrett Cassada*, 86 B.R. 541 (Bankr. E.D. Tenn. 1988) for the proposition that, under § 26-2-111(1)(D), Mr. Casals' accounts do not qualify for the exemption provided by subsection 105(b) because the accounts "were all self-directed and under the complete control of" Mr. Casals. Ms. Massey contends that a debtor is precluded from "claiming the exemption of an IRA account when the owner of the account can withdraw the funds contained in the account at any time."

Mr. Casals, on the other hand, asserts that because the unrefuted proof establishes that the accounts qualify under section 408 of the Internal Revenue Code, they are "absolutely" exempt under section 2-16-105(b). He contends that Tennessee Code Annotated § 26-2-111 is inapplicable to this case. Mr. Casals further argues that, although dicta found in *In Re Peeler* is somewhat confusing and ambiguous, the cases cited by Ms. Massey are not relevant to this appeal where they do not implicate the garnishment of IRA accounts.

Upon review of the record, we observe that there has been some confusion in this case concerning the adequacy of notice; exactly which of Mr. Casals' accounts were frozen and/or liquidated upon garnishment (apparently, the garnishment was amended at least twice), and which of those are asserted to be IRA accounts; and whether Mr. Casals properly filed a claim for exemption. The accounts that are the subject of this appeal are two accounts, one which ends in 21 (account 21) and one which ends in 91 (account 91).

At the December 2009 hearing of the matter, Mr. Casals testified that the accounts were traditional IRAs, and that account 91 was a rollover IRA. Upon questioning by the juvenile court, Mr. Casals testified that all his accounts with E*Trade had been liquidated and the funds sent to the juvenile court, including accounts 21 and 91. Mr. Casals testified that the two accounts had been opened five or six years ago, when he rolled over a 401k plan. Mr. Casals testified that although he filed a claim for exemption in "some particular court," although not the juvenile court, with respect to some accounts, he did not file a claim of exemptions for accounts 21 and 91 because they are statutorily exempt. Mr. Casals could not recall in which court he filed a claim of exemption. Mr. Casals testified that the IRA accounts were "self-directed," and that the frequency of his trades in them varied. He testified that in 2008, he traded in the accounts "often."

The transcript of the hearing before the trial court demonstrates that the court was faced with four questions in this case: (1) whether accounts 21 and 91 were IRA accounts under § 408 of the Internal Revenue Code; (2) whether the matter is governed by Tennessee Code Annotated § 26-2-105(b), § 26-2-111(1)(D), or both; (3) if the accounts were IRA accounts qualified under § 408, were they exempt from garnishment under the Tennessee exemption statutes; (4) if the accounts are exempt under the Tennessee statutes, whether a claim of exemption must be filed in order to exempt them from garnishment.

The transcript reflects that the trial court determined that account 21 and account 91 were IRA accounts; that section 26-2-105(b) and section 26-2-111(1)(D) are both applicable to this matter; and that IRA accounts generally are exempt under the Code. The court also determined that, although Mr. Casals' accounts were IRA accounts, they were not exempt under section 26-2-111(1)(D) where they were self-directed accounts in which Mr. Casals could trade at will, and where Mr. Casals could access and withdraw funds from the account, albeit by incurring a tax penalty. The trial court concluded that the funds therefore were not exempt from garnishment under the Tennessee exemption statutes. The trial court appears to have pretermitted the question of whether Mr. Casals was required to file a claim of exemption as unnecessary in light of the court's construction and application of the statutes.

We first turn to the trial court's determination that accounts 21 and 91 were IRA accounts. Despite Ms. Massey's assertion that the accounts did not qualify as IRA accounts, there is nothing in the record to preponderate against the trial court's finding. We are not insensitive to Ms. Massey's assertions with respect to the credibility of Mr. Casals regarding his financial status throughout this long dispute. See *Massey v. Casals*, 315 S.W.3d at 792. However, the only evidence contained in the record regarding the nature of the accounts was Mr. Casals' testimony that the accounts were traditional IRA accounts, and that they were established by rollover funds from a 401(k) account. Ms. Massey's argument that the accounts are not IRA accounts qualified under section 408 of the Internal Revenue Code for the purpose of the exemption provided by section 26-2-105(b) is predicated only on the fact that the investments in the accounts were self-directed by Mr. Casals. Additionally, Mr. Casals' testimony that the funds could not be accessed without considerable tax penalties is not disputed by any evidence in the record.

We next turn to Mr. Casals' assertion that the trial court erred by concluding that the accounts were not "absolutely" exempt under section 2-26-105(b) in light of section 26-2-111(1)(D). At the oral argument of this matter before this Court, counsel for Mr. Casals asserted section 26-2-111 is irrelevant to this case, and that the matter is governed exclusively by section 26-2-105(b). Mr. Casals' brief reflects this assertion where it does not address the implications of the limiting language in section 26-2-111(1)(D). Ms. Massey's argument, on the other hand, as we perceive it, is that the trial court's conclusion is correct because, under bankruptcy case law interpreting IRA accounts in light section 26-2-111, the accounts are not exempt where the investments in the funds were directed by Mr. Casals and where the assets can be accessed notwithstanding tax penalties.

The statutes providing exemptions from garnishment are to be liberally construed in favor of the debtor. *Wright v. Brooks*, 49 S.W. 828 829 (Tenn. 1899); *Newark Ins. Co. v. Seyfert*, 392 S.W.2d

336, 345 (Tenn. Ct. App. 1964). Additionally, we note that opinions of the bankruptcy court, although persuasive, are not binding on this Court. Tennessee, moreover, has "opted out" of the exemptions scheme provided by the Bankruptcy Reform Act of 1978, 11 U.S.C. 522; the only exemptions available to the citizens of Tennessee are those provided by the Tennessee Code. Tennessee Code Annotated § 26-2-112 (2000); *In re Lenore Berry Ross Storey v. Bradford Furniture Co., Inc.*, 910 S.W.2d 857, 859 (Tenn. 1995). With these observations in mind, we turn first to the plain language of the Code and then to the case law relied on by the parties.

As noted above, Tennessee Code Annotated § 26-2-105(b) provides an exemption from garnishment for retirement plans qualified under §§ 401(a), 403(a), 403(b), 408, and 408A of the Internal Revenue Code. This exemption is in addition to the personal property exemptions afforded by sections 26-2-103 and 104; the disposable earnings exemption provided by section 26-2-106; the exemptions for dependent children provided by section 26-2-107; and the insurance benefits exemption afforded by section 26-2-110. Section 26-2-111 provides "additional exemptions" for "certain benefit payments - awards - tools of trade - health care aids - child support obligations." Section 26-2-111(1)(D) states that, in addition to the exemption provided by section 26-2-103, the debtor shall be entitled to an exemption of his right to receive a payment under, *inter alia*, a pension or "similar plan" to the same extent that earnings are exempt pursuant to section 26-2-106. The exemption is available unless, *inter alia*, the plan or contract does not qualify under §§ 401(a), 403(a), 403(b), 408, 408A or 409 of the Internal Revenue Code. Thus, the plain language of the section applies to the rights to receive payments from a pension or similar plan.

Subsection 111(1)(D) further provides, however,

> [t]he assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at the debtor's option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less[.]

Tennessee Code Annotated § 20-2-111(1)(D)(iii)(2000 & Supp. 2010). Therefore, construing the statutory sections together to effectuate the intent of the legislature in light of the entire statutory scheme, we must disagree with Mr. Casals' assertion that the exemption provided to an IRA account is governed exclusively by the plain language of section 26-2-105(b), and that section 26-2-111(1)(D) is irrelevant. Section 26-2-111, by its title, provides "additional exemptions" applicable to, *inter alia*, "[c]ertain benefit payments." Among the payments enumerated by the section are payments under a pension or "similar plan." These payment are exempt to "the same extent that earnings are exempt pursuant to § 26-2-106" if the plan or contract qualifies under § § 401(a), 403(a), 403(b), 408, or 409. Tennessee Code Annotated § 26-2-111(1)(D)(iii). This subsection also provides that the *assets* of the fund or plan from which the payments are received or "are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58)." It also provides that

the assets are not exempt where "the debtor may, at the debtor's option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less[.]"

We are not insensitive to the fact that this subsection appears somewhat out of context with the remainder of the section where it pertains to the assets of the fund rather than only payments from the fund. However, the plain language of the subsection applies to the assets of funds from which payments are to be made, in addition to those from which payments are being received. Thus, we cannot agree with Mr. Casals that the subsection is irrelevant.

We also do not agree that the case law relied upon by Mr. Casals in his brief, *In re Martin*, 102 B.R. 639 (Bankr. E.D. Tenn. 1989); *In re Bowman*, 109 B.R. 789 (Bankr. E.D. Tenn. 1990); and *In re Vandenberg*, 276 B.R. 581 (Bankr. E.D. Tenn. 2001), stands for the proposition that IRA accounts are "absolutely exempt" under the statutes. The *Martin* court determined that ERISA did not preempt the Tennessee statutes and that an IRA that qualified under section 408(a) of the Internal Revenue Code constituted a "retirement account" for the purpose of the Tennessee statutes. *In re Martin*, 102 B.R. at 645. The *Bowman* court concluded that a "retirement plan" as referenced in section 26-2-105(b) (then codified at 26-2-104(b)) included a plan established by an agency of the United States, and was not limited to private sector plans. *In re Bowman*, 109 B.R. at 792. The *Vandenberg* court concluded that from the time they were established by section 408A of the Internal Revenue Code, Roth IRAs fell within the exemption provided by section 26-2-105(b) despite the legislatures' delay in amending the section until 2000 to explicitly include plans that qualify under section 408A. *In re Vandenberg,* 276 B.R. at 586. The *Vandenberg* court opined that "[t]he structure and purpose of traditional and Roth IRAs are analogous and it is inconceivable that the Tennessee legislature would consciously chose to protect one and not the other." *Id*. The court further noted that Roth IRAs did not exist when the statute originally was enacted, and that to conclude otherwise would defeat the purpose of the exemption. *Id*.

The historical purpose behind the statutory exemptions is to preserve the debtor's ability to support himself and his family. *In re Storey v. Bradford Furniture Co., Inc.*, 910 S.W.2d 857, 859 (Tenn. 1995)(quoting *Jones v. Williams*, 32 Tenn. 105, 106 (Tenn. 1852): the exemptions "secure the poor in the possession and use of the means necessary for their subsistence."). As the *Vandeberg* court noted, the Attorney General of Tennessee has "identified two primary goals in the legislative history of § 26–2–105." *Vandeberg*, 276 B.R. at 586. First, the legislature intended to protect private retirement plans in order to "benefit and encourage people who are saving money for their retirement." *Id.* (quoting Tenn. Att'y Gen. Op. 98–184). Second, the legislature extended the exemption to private plans protected by federal law. *Id.* (citing Tenn. Att'y Gen. Op. 98–184).

"[S]tatutes must be construed 'with the saving grace of common sense.'" *State ex rel. Maner v. Leech*, 588 S.W.2d 534, 540 (Tenn. 1979). The most important and compelling rule of statutory construction "is that the law be rendered intelligible and absurdities avoided." *Roberts v. Cahill Forge & Foundry Co.*, 184 S.W.2d 29, 31 (Tenn. 1944). The courts must avoid a construction that would defeat or frustrate the purpose of the statute or that "would work to the prejudice of the public interest." *Maner*, 588 S.W.2d at 540 (citations omitted). Construing sections 2-26-105(b) and 2-26-

111(1)(D)(iii) together in light of the purpose of the statutory exemption scheme, we agree with the Attorney General that the legislature intended to encourage the citizens of Tennessee to save for their retirement and to protect retirement plans that qualify under the enumerated sections of the Internal Revenue Code. We believe the legislature also intended to limit the exemption to retirement plans that cannot, at the option of the debtor and without an involuntary penalty, such as a federally mandated tax penalty, be accessed by the debtor before 58-years of age, as a lump sum, or accelerated such that payments may be received over a period of 60 months or fewer.

Notwithstanding language in *Peeler* which suggests that "typical" IRAs established by the debtor are not exempt because they can be accessed by paying a tax penalty, we do not believe the legislature intended to eviscerate rather than limit the exemption provided in section 26-105(b). Virtually all IRA accounts may be accessed upon the payment of the penalty, and we cannot agree with Ms. Massey that the ability to encroach upon an IRA only by incurring a substantial tax penalty amounts to a "right" to receive funds. If, however, the debtor may, without a penalty prescribed by law, receive the assets as a lump-sum payment, in periodic payments over a period of 60 months or less, or before 58-years of age, the pension or retirement plan is not exempt. This interpretation is supported by the purpose of the exemption, the logical interplay between the statutory sections, and the majority of applicable case law.

Further, we do not agree with Ms. Massey that the cases relied upon in her brief, *In re Elsea*, 47 B.R. 142 (Bankr. E.D. Tenn. 1985) and *In re Casada*, 86 B.R. 541 (Bankr. E.D. Tenn. 1988), support the proposition that an IRA is not exempt from garnishment for the purposes of the Tennessee Code if the debtor controls and trades the investments within the funds. In *Elsea*, the bankruptcy court addressed whether debtor's plans, which were qualified as tax-exempt under the Employee Retirement Income Security Act (ERISA) and Internal Revenue Code 401(a), were exempt under the Tennessee Code. The pension plans in that case consisted of group annuity contracts under which the debtor had a right only to the income. Contributions to the plans were made entirely by the debtor's employer, and the debtor in *Elsea* did not have access to the funds prior to retirement. The *Elsea* court noted that the provision in section 26-2-111(1)(D)(iii) "can be confusing in its treatment of assets as something different from a right to payment[,]" but determined that it "effectively denies the debtor any exemption of his right to payment" under the plans in that case. *Id.* at 146. The court concluded, however, that the Tennessee courts would consider the pension plans to meet the requirements of a spendthrift trust, and held that they were exempt from the bankruptcy estate. *In re Paul Don Elsea, Sr.*, 47 B.R. 142 (Bankr. E.D. Tenn. 1985). The *Elsea* court specifically "[left] open" whether the same determination would be made in a case wherein the debtor had contributed to the funds or had "unrestricted access" to them before retirement. *Id.* at 149.

In *Cassada*, the bankruptcy court considered the debtor's stock ownership plan and deferred income plan. *In re Willie Edward Barrett Cassada v. Westvaco Corp., Bankers Trust Co. and Willie Edward Barrett Cassada*, 86 B.R. 541 (1988) (Bankr. E.D. Tenn. 1988). The debtor's employer established both plans, all of the assets in the plans consisted of voluntary contributions made by the debtor plus interest or dividends, and the plans were qualified under federal law. *Id.* at 542-543.

The court determined that neither plan was exempt under section 26-2-111(1)(D), however, because the debtor was entitled to receive the money in both plans in a lump sum upon termination of employment. The court reasoned that the debtor's voluntary termination of employment would not amount to a penalty, and that the plans were not exempt where the debtor had the right to receive payment in a lump sum of the total in either account upon voluntary as well as involuntary termination of employment. *Id*. at 543. The court further noted that, under the statute, the account would not be exempt if the debtor could withdraw the total in a lump sum, or in periodic payments over 60 or fewer months. *Id.*

There is nothing in the statutes that limits or restricts who may direct or control the way in which the assets which comprise a retirement fund are managed. In this case, Mr. Casals may self-direct the funds with respect to the way in which the assets are invested. He cannot alter the terms under which payments from the funds are received. As noted above, the trial court found that accounts 21 and 91 are IRAs. Accordingly, Mr. Casals' right to receive payment from the accounts are limited to the provisions of Internal Revenue Code regardless of how the assets are invested.

We finally address Ms. Massey's assertion that to exempt an IRA from garnishment would allow a debtor to shield his income from child support. Section 26-2-108 specifically provides that a debtor's "personal earnings shall not be exempt from an order" of child support or alimony. Although section 26-2-102 defines "earnings" to include payments pursuant to a retirement plan, the courts have long held that it was not the legislature's intent to shield property from court-ordered child support. *Edwards v. Edwards*, 713 S.W.2d 642, 649 (Tenn. 1986). (Tenn. Ct. App. Sep. 8, 2005). Tennessee courts "have reasoned that the purpose behind such exemptions is to preserve a means of support for the debtor's family." *Ausley v. Ausley*, No. M2004-01360-COA-R3-CV, 2005 WL 2205922, at *4 (quoting *State ex rel Baker v. Tolliver*, No. 03A01-9710-JV-00041, 1997 WL 367200, at *1 (Tenn. Ct. App. June 30, 1997)). The exemption does not provide a device through which one may be relieved of one's obligation to support one's children. *Id.* (citations omitted). This argument is without merit.

We finally turn to Ms. Massey's assertion before the trial court that Mr. Casals had failed to file a timely claim of exemption to the garnishment, and to Mr. Casals' assertion that he first received notice of the garnishment of account 21 and account 91 while attempting to trade investments in the accounts in January 2009, and that he was not served with notice of the garnishments. Upon review of the record, we note that the November 2008 writ garnished other accounts belonging to Mr. Casals, and not accounts 21 and 91. Accounts 21 and 91 were added on January 21, 2009. The January 21, 2009, writ also purported to garnish "all accounts solely or jointly" in Mr. Casals' name. On January 27, 2009, Mr. Casals filed a motion to "quash writ of garnishment" and specifically referenced the November 2008 writ and the two accounts referenced in it. In his motion, however, he asserted that those accounts were exempt under Tennessee Code Annotated § 26-2-105 and or Tennessee Code Annotated 26-2-111. Additionally, the record does not include anything to evidence when Mr. Casals received notice of the garnishment of accounts 21 and 91. The hearing of Mr. Casals' motion to quash in the trial court, however, pertained entirely to accounts 21 and 91, and the parties clearly had actual notice of the exemptions asserted. Without

adopting Mr. Casals' assertion that the exemption is "absolute" and that no claim of exemption must be filed, we are satisfied that the exemption was sufficiently asserted in this case.

### *Holding*

The unrefuted proof in this case is that Mr. Casals' accounts ending in 21 and 91 were IRA accounts that qualify under section 408 of the Internal Revenue Code, and that Mr. Casals had no right to access the assets in the accounts other than by incurring a substantial federal tax penalty. Accordingly, the accounts were exempt from garnishment under Tennessee Code Annotated § 26-2-105(b) and Tennessee Code Annotated § 26-2-111(1)(D). In light of the foregoing, the judgment of the trial court is reversed. Ms. Massey's request for attorney's fees on appeal is denied. Costs of this appeal are taxed to the Appellee, Patricia Ann Gho Massey.

_____
DAVID R. FARMER, JUDGE